Packer *versus* The Sunbury and Erie Railroad Company.

1. A preliminary injunction will not be refused for an error in the bill which is amendable, although the amendment has not been actually made.

2. On a bill brought by a corporation, the plaintiff is entitled to relief against wrongs committed before the issuing of letters patent, if there was no such tardiness in organizing as forfeited the privileges given by the charter.

3. All public grants to corporate bodies must be construed strictly, and this is more especially true of a public grant which interferes injuriously with another grant previously made.

4. Construction of the Act of 27th March, 1852, extending the privileges of the Sunbury and Erie Railroad Company.

5. When a privilege is given by Act of Assembly to a railroad company, to extend or make connections *as hereinafter provided*, and two provisoes are appended, both must be considered, and the privilege cannot be exercised in a manner inconsistent with either, unless they are repugnant.

6. In cases of irreconcilable repugnancy, it is the last part of a statute which is taken to express the intention of the lawgiver.

THIS was a bill in Chancery, filed in the Supreme Court when sitting at Harrisburg, in June 1852. The case was heard at Sunbury in July 1852. It was a bill filed at the instance of William F. Packer, as President, and Simon Cameron, George F. Miller, and others, Directors of The Susquehanna Railroad Company, *v.* The Sunbury and Erie Railroad Company.

It was alleged in the bill that the complainants were stockholders and proprietors of shares in the Susquehanna Railroad Company. That the said Company was incorporated under an Act of Assembly approved on the 14th April, 1851, with authority to construct a railroad connecting with the York and Cumberland Railroad, or with the Pennsylvania Railroad, on either side of the river Susquehanna, or on the Juniata, and with the right and privilege to connect the same with both or either of said railroads; and running through Halifax and Millersburg, in Dauphin county, to Sunbury, in Northumberland county. By the *third* section of the act it was enacted "that if the said Company shall not commence the construction of said road within three years, and complete it in eight years from the passage of the act,

[Packer *v.* Sunbury and Erie Railroad Company.]

the same shall be null and void, except so far as the same may be necessary to settle up the affairs and pay the debts of said Company:" *Acts of* 1851, 627–8. It was further alleged that subscriptions to the stock of the said Company to the amount of $450,000 had been made, and the necessary amount had been paid to the commissioners to authorize the issuing of letters patent, which were issued on the        day of May last, viz. 1852.

It was further alleged that an exploratory survey of a route for the said road, from Harrisburg to Williamsport, by the way of Sunbury, had been made by the commissioners appointed in the act; that a President and Directors had been elected, and the Company duly organized; and that a corps of engineers were then surveying the route for the said road, with a view to the immediate location and the diligent prosecution thereof.

It was further complained that the *Sunbury and Erie* Railroad Company have had surveyed and marked a line of railroad from the town of Dauphin, in the county of Dauphin, about eight miles north of Harrisburg, to Sunbury, and have, by their agents, entered upon the ground and commenced the *construction* of a road between Dauphin and Sunbury, to the injury of the Susquehanna Railroad Company. It was alleged that the Sunbury and Erie Railroad Company had no authority to construct the road in question at that time. The act for the incorporation of that Company, passed on the 3d April, 1837, authorized the construction of a railroad from the *town of Sunbury to the harbor of Erie: Acts of* 1837, 186–9. By the *ninth* section of a supplement thereto, passed 27th March, 1852 (*Acts of* 1852, p. 186), this Company was authorized "to construct lateral and branch roads from the line of their road southward and eastward from Williamsport, to intersect any other railroads, by means of which the said Company may be enabled to form connections with the city of Philadelphia, by way of the valley of the Schuylkill, or as hereinafter provided, by way of the valley of the Susquehanna. *Provided,* That on any road that may be made between Sunbury and Harrisburg, *the same tax* be and is hereby imposed as is now or may hereafter be imposed by law on the Susquehanna Railroad: And *provided further,* That if the Susquehanna Railroad Company shall fail to put that portion of the line of their road under contract between Bridgeport (which is opposite Harrisburg) and Sunbury, *within one year* from the passage of this act, and complete the same within *two* years thereafter, *then and in that case* the Sunbury and Erie Railroad Company is hereby authorized to extend their road *from Sunbury by the valley of the Susquehanna,* to connect with the Pennsylvania Railroad at such point as may be deemed most expedient by the said Company, on the same terms and conditions that they are now authorized to construct the main line of their road between Sunbury and Erie."

[Packer *v.* Sunbury and Erie Railroad Company.]

It was alleged in the bill that the Sunbury and Erie Company had no right to construct a railroad from Sunbury to Harrisburg or Bridgeport, *except in pursuance of the ninth section above in part recited.* It was further alleged, that the construction of such a road by that Company would obstruct, hinder, and interfere with the road which the Susquehanna Railroad Company have authority to make. A writ of *subpœna* was asked for, and also an injunction to restrain the latter Company from proceeding to construct a road between Sunbury and Dauphin before the 27th day of March, 1853 (when the year would expire within which the Susquehanna Company were to put that part of their line of road under contract), or at any time whatever, provided the Susquehanna Railroad Company shall put the portion of their road between Bridgeport and Sunbury under contract before the 27th March, 1853, and complete it within two years thereafter.

An answer on the part of the Sunbury and Erie Railroad Company was submitted, in which it was admitted that they had had a line of railroad marked out, from Sunbury to Duncan's Island, above the town of Dauphin, and had by their contractors, &c., entered upon the ground. It was averred that it was not true, that according to the provision of the Act of 27th March, 1852, they were not authorized to construct a railroad between Sunbury and Harrisburg before the 27th March, 1853, nor until the failure of the Susquehanna Company to contract for and complete that portion of the line of their road within the times stated in the bill; but it was alleged that they were authorized *at any time* to construct such a road subject to the condition contained in the tenth section of the Act of 27th March, 1853, viz., that if they shall construct such a road, they shall make the towns of Dauphin, Halifax, Millersburg, and Georgetown, points on said road, which they designed to do. The tenth section referred to is as follows :—

Sect. 10. "That if the said Company shall construct a railroad from Bridgeport or Harrisburg to Sunbury, under the provisions of this act, they shall make the towns of Dauphin, Halifax, and Millersburg, in Dauphin county, and Georgetown, in Northumberland county, points on said road."

It was further alleged, that if the complainants were entitled to any relief from a Court of equity, it should have been asked for by bill submitted on the part of the Susquehanna Railroad Company, and not by parties claiming to be shareholders or directors of said Company.

The case was argued by *B. H. Brewster*, on part of the complainants.—It was stated that it was alleged on the part of the *respondents* that they had the right to commence the construction of the road in question *presently*, on the payment of a tax to the Commonwealth ; and without the payment of a tax, provided the

Susquehanna Company failed to put their road under contract within one year, &c. To this it was answered, that the 9th section of the Act of 1852, conferred upon the Sunbury and Erie Company the right to construct the road *only* on the failure of the Susquehanna Company to put the part of their road, designated in the act, under contract in one year from the passage of that act. Secondly, That if the ninth section of the Act of 1852 did, in direct terms, confer the power to occupy presently the line in question, that in interfering with and abridging the right of the Susquehanna Company to select a route, and impairing the obligation of a contract, the Act was *unconstitutional.* But it was contended that, according to the obvious meaning of the 9th section of the Act of 1852, the Sunbury and Erie Company were not authorized to extend their road below Sunbury until the failure, designated in the Act of 1852, on the part of the Susquehanna Company, occurred. It was alleged, that the charter held by the Susquehanna Company was a contract, and in support of the proposition, reference was made to the Dartmouth College case; also 4 *Gill & Johnson,* Chesapeake Canal Co. *v.* Balt. R. R. Co.; 6 *Wend.* 95, Cayuga Bridge *v.* Magee; 6 *Shepley* 109; 12 *Ver.* 632; 11 *New Hamp.* 19; 8 *Smedes & Marshall* 9; 7 *Conn.* 31; 2 *Mass.* 145; 3 *Ired. Eq.* 613; 1 *Nott & McCord* 401; 2 *Pa. Rep.* 194; 1 *Harris* 139, Commonwealth *v.* Cullen.

The case of the Charles River Bridge *v.* Warren Bridge Co., 11 *Peters,* was not a conflict for the same site for the construction of a bridge, but a dispute between two neighboring bridges for the tolls. In the law extending the charter of the Charles River Bridge Co., there was a reservation of the right to permit the construction of other bridges. In this case the Sunbury and Erie Company do not seek to construct *a road* lateral to that proposed to be made by the Susquehanna Company, but they have it in view to occupy the same ground which has been designated for the road of the Susquehanna Company. The Legislature have no constitutional power to grant them such authority : 11 *Peters* 636.

*Campbell,* then Attorney-General, and *Meredith,* for respondents.

*Hughes,* with whom was *Kunkel,* for complainants.

The opinion of the Court was delivered by

BLACK, C. J.—The bill in this cause sets forth that the plaintiffs are stockholders in the Susquehanna Railroad Company, which was incorporated by an act of the Legislature, passed 14th of April, 1851, and authorized to construct a road from Sunbury to Harrisburg or Bridgeport, with a provision that unless the work should be commenced within three years from the date of the act, the charter should be void; that in pursuance of this act of incor-

[Packer *v.* Sunbury and Erie Railroad Company.]

poration large subscriptions have been made to the capital stock of the Company, letters patent have been issued by the Governor, officers have been elected, a corps of engineers employed, and an exploratory survey made. The bill complains that the Sunbury and Erie Railroad Company, under color of its charter and of a supplement passed in 1852, claim to have the authority to make and construct a railroad over the same route, and that the last-mentioned Company has actually begun the construction of such a road, and entered upon the ground surveyed by the Company to which the plaintiffs belong, and is at this time prosecuting its work. These acts and doings are averred to be contrary to equity and good conscience, and without any authority whatever in the charter under which the Sunbury and Erie Railroad Company pretends to be acting. The relief prayed for is an injunction. The bill having been filed, a preliminary injunction is moved for, to prevent the defendants from proceeding further until the cause is decided.

The motion is resisted on the grounds—1st. That the plaintiffs being corporators, have no right to sue, either at law or in equity, except by their corporate name. 2d. That the survey of the Sunbury and Erie Railroad Company was made before the issuing of letters patent by the Governor to the Susquehanna Railroad Company. 3d. That the ninth section of the supplement to the defendants' charter, passed the 27th of March, 1852, gives to the Sunbury and Erie Company the right to extend its road from Sunbury, by the valley of the Susquehanna, to such point on the Pennsylvania Railroad as they may deem expedient, and therefore the acts and doings complained of are not usurpations, but fully authorized by law.

The plaintiffs have a right to amend their bill by changing the name. For that purpose a motion has been made, and is now pending. If, therefore, it be true that a final injunction cannot be decreed on the bill as it now stands, the objection would not avail to prevent the preliminary injunction.

There does not appear to have been any tardiness in the organization of the Susquehanna Company. There is nothing in the lapse of time, which intervened between the act of incorporation and the issuing of letters patent, to forfeit the corporate rights granted to the Company, or to divest the stockholders of the privileges which the charter was intended to confer. The acts done and threatened to be done by the defendants, are, therefore, as much against law as if they had all been committed after the letters patent were issued. Unless these acts can be justified in some other way, this will be no excuse.

The strain of the case is on the construction of that section in the supplement to the defendants' act of incorporation which is relied on as giving them the privilege to make a railroad along the same route which the Susquehanna Company has adopted; and

[Packer *v.* Sunbury and Erie Railroad Company.]

the counsel on both sides have done well to throw almost the whole weight of their argument upon that point. We have considered it with the care which is due to a question involving interests, public and private, of so much magnitude.

In 1837, the Legislature incorporated the Sunbury and Erie Railroad Company, with authority to make a railroad from Sunbury to Erie, but without any authority to extend their work *further south or east than Sunbury*. By this, their original charter, they had no more right to make a road from Sunbury to Harrisburg, than if they had never been incorporated at all. Such was the state of things in 1851, when the charter was given to the Susquehanna Company. The act which brought the latter company into being gave them the privilege of constructing their railroad along the Susquehanna river between Harrisburg and Sunbury, by a route to which nobody else had any right or pretence of claim. On the faith of this unequivocal grant of authority to construct their work on a track then entirely open to their enterprise, they raised the capital necessary for the purpose, and prepared to commence it. It is at this stage of their progress, that the Sunbury and Erie Company set up their claim as grantees from the state of the same privilege, and assert that they, too, have a legal right to make a road between the same termini, along the same valley, and by the same intermediate points. Did the Legislature intend that these two companies should each have equal authority to construct the same identical work? Did they desire or expect that two railroads should be made between Harrisburg and Sunbury, and conducted by two different companies? It seems to us extremely improbable that this could have been contemplated. Doubtless it was very desirable that an improvement so important to the northern part of the state should be finished as soon as possible, but the struggle between two companies, invested with the same privileges, each having an equal right to the ground, would be more likely to end in the ruin of both, than to give either a fair chance of success. Legislation like this would not only be injurious in its effect on the public interest, but it would be a wrong against the company first incorporated, whose stock, subscribed with confidence in the good faith of the state, would be greatly reduced in value, and perhaps rendered worthless. This would be such a violation of justice as no one would expect to see perpetrated by the representatives of a people who love the right and hate the wrong like those of Pennsylvania. The improbability that the rival corporations were intended by the General Assembly to be clothed with equal power to make the same road, along the same route, is infinitely increased when we find that no provision is made for settling in any legal way the innumerable disputes which, in that case, must necessarily arise between them. We assume that it is practicable to make both

[Packer *v.* Sunbury and Erie Railroad Company.]

roads, and practicable it doubtless is, at least in that sense in which anything is practicable by those who have the command of very large means, and are willing to use them unsparingly. Nevertheless, the choice of the best location, especially in the narrow parts of the valley, or where the river washes the foot of the mountain, may be of such immense value to the party which gets it that it would be fiercely contended for. How is such a contest to be settled? Shall it be determined by the wager of battle? Or in what other form shall the appeal to force be made? The wisdom of the state has furnished no law to settle it by but the law of the strongest. The struggle would not cease with the survey; and when the building of the two roads would bring thither thousands of excitable men, the probability of violence and bloodshed would be very great. Supposing the road to be made, and the cars and locomotives of the respective companies to be running side by side, and sometimes crossing each other's track, what hope could be entertained that they would regard each other's convenience and interest in such a manner as to keep the peace and avoid collisions dangerous to property and life? Certainly the least desirable of all things would be two railroads, thus lying together, interfering with each other, and conducted by hostile companies. The most extravagant and wasteful expenditure of capital which can well be conceived, would be that of the millions which, according to the defendants' opinion, the Legislature meant to have thrown away on this double enterprise. Perhaps it has never been heard of before that any legislative body in this Union, or elsewhere in the civilized world, has created such a difficulty in the prosecution of internal improvements, or adopted any measure so full, as this would be, of impolicy, wrong, and peril. These considerations are sufficient to induce a careful examination of the statute before we adopt the construction contended for. When the Legislature means to invade previously invested rights, to disregard the public interest and endanger the peace of the Commonwealth, its intention must be expressed in terms free from all ambiguity.

One argument has been used by the defendants' counsel, which at first seemed to be not without weight. It was insisted that the purpose of the second law was to give Philadelphia the advantages to which she was fairly entitled, and to prevent Baltimore from competing with her. It is natural and commendable in the Legislature to guard the interests of our commercial metropolis, and perhaps not less so to feel some jealousy of a rival city. If, therefore, the Susquehanna Company's charter is likely to benefit Baltimore and injure Philadelphia, this would have been a very good reason for refusing it at the beginning. But being granted, and the aversion to its inexpediency being once overcome by other considerations, it seems like a very slight reason for authorizing another company to interfere with the rights it secures.

[Packer *v.* Sunbury and Erie Railroad Company.]

All the arguments *a priori* are therefore against the defendants, and impose upon us the necessity of giving to this statute a construction strongly in opposition to the right claimed under it. But to justify a strict construction it was not necessary to consider the nature and circumstances of the particular law before us, for it belongs to a class of statutes which, by a long-established and well-defined rule of interpretation in all the states of the Union, as well as in England, must receive and uniformly have received the strictest possible construction. All acts of incorporation and acts extending the privileges of incorporated bodies, are to be taken most. strongly against the companies. Whatever is not expressly. and unequivocally granted in such acts is taken to have been withheld: (11 *East* 685; 4 *Bingham* 452; 2 *Barn. & Adol.* 635.) The same rule was laid down in very clear terms by Chief Justice MARSHALL in Billings *v.* The Providence Bank, (4 *Peters* 514.) In· the Charles River Bridge *v.* The Warren Bridge, (11 *Peters* 521,) it was . placed on grounds so impregnable by the present Chief Justice of the Supreme Court of the United States, that it is not probable we will ever hear it seriously questioned again. In this Court it has been often recognised, and so far as I know, never denied. See Easton Bank *v.* The Commonwealth, (10 *Barr* 442,) and the cases there cited.

Let it not be said that both parties in this cause claim under acts of incorporation, and therefore both are equally affected by the operation of this rule; for though that be true, one of them is beyond its reach. The Susquehanna Company claims under a charter which *is* free from all doubt or ambiguity. It is not pretended that *they* have not all the rights which they claim. They are here not defending their own privileges, but seeking to restrain the exercise of those claimed by the Sunbury and Erie Company. The great principles of construction ruled in the Charles River Bridge case are therefore strongly in favor of the plaintiffs.

Keeping this in mind, and remembering that the supplement relied on is not only a public grant, but a public grant which seriously conflicts with a previous one, and is, in its nature, purpose, and object, such a one as no legislature would be likely to make, we come to examine the 9th section of the supplement to the defendants' charter, which is as follows:

" That the said Company shall have power to construct lateral and branch roads from the line of their road, at, southward, or eastward from Williamsport, to intersect any other railroad, by means of which the said Company may be enabled to form connections with the city of Philadelphia by way of the valley of the Schuylkill, or, as hereinafter provided, by the way of the valley of the Susquehanna: Provided, That on any road that may be made between Sunbury and Harrisburg, the same tax be and is hereby imposed, as is now or may hereafter be imposed by law on

the Susquehanna Railroad. And provided further, That if the Susquehanna Railroad Company shall fail to put that portion of the line of their road under contract between Bridgeport and Sunbury, within one year from the passage of this act, and complete the same within two years thereafter, then, and in that case, the Sunbury and Erie Railroad Company is hereby authorized to extend their road from Sunbury by the valley of the Susquehanna, to connect with the Pennsylvania Railroad at such point as may be deemed most expedient by the said Company, on the same terms and conditions that they are now authorized to construct the main line of their road between Sunbury and Erie."

That the last of these two provisoes does couple a condition with the powers granted to the Sunbury and Erie Company of extending their road by the Susquehanna, is so plain, that any attempt to prove it would be a mere waste of words. That the privilege is only to be exercised if the Susquehanna Company fail to complete its work within a certain time, and that the defendants shall only proceed with their extension "then and in that case," is wholly undeniable. Shall we treat this proviso as nugatory and meaningless? Shall we strike it from the statute and give it no attention? Certainly not. Yet how can we say that the power claimed is given without condition, unless we eliminate the words which impose the condition? We cannot consider the section in detached parts. We must take it as a whole. All of it is consistent, and, if it were not, that would not help the defendants' argument, for the rule, in cases of irreconcilable repugnancy, is to let the last part and not the first determine the meaning of the lawgiver. At the head of the section the Company is authorized to form connections with Philadelphia by way of the valley of the Susquehanna. How? As hereinafter provided. And then follow the two provisoes, one imposing a tax, and the other fixing the time when they may begin. Both these provisoes are, one as much as the other, drawn up to, and connected with the grant, and made part and parcel of the grant, "as hereinafter provided." What is hereinafter provided? That the right shall be exercised if the other Company fail, is as much hereinafter provided as it is hereinafter provided that a tax shall be laid on any road that may be made.

But it is argued that the power is given in the body of the section, coupled with the condition in the first proviso, and that the second proviso is a new grant of the same power upon new conditions. This forces us to ask why two separate grants, totally independent of and unconnected with each other, should be run together in the same section. Why should one independent grant be tacked as a proviso upon another?

But this is not all. The section says they may construct lateral and branch roads, and form connections with Philadelphia by way of the Susquehanna, *as hereinafter provided.* Now these last words must point to some *mode of making* the road, or *forming the con-*

[Packer *v.* Sunbury and Erie Railroad Company.]

*nection*, for that is the thing to be done, as hereinafter provided. And to satisfy this call we are directed to the first proviso, which points out no mode of exercising the power at all. It declares that *any* road through that valley shall be subjected to a tax. And is a tax imposed by law upon a road when made to be called a mode or manner of constructing branch roads or making connections?

The defendants' construction misreads the body of the section by assigning an improper meaning to the words "as hereinafter provided;" it misreads the first proviso by disregarding the word "any" and declaring that a tax is to be paid not *on any road*, but only on one made within two years; and it misreads the last proviso by tearing it entirely from the rest of the section, to which it properly belongs. When the meaning which the defendants would assign to the section is expressed in words, it will read somewhat thus: The Sunbury and Erie Company may disregard the rights and privileges heretofore vested in the Susquehanna Company, and construct a road as soon as they think proper, by the valley of the Susquehanna, in the following manner, that is to say—any road, no matter when made, or by whom, shall *be subject to a tax;* and further, any road shall *not* be subject to a tax, it being the legislative will that no tax shall be imposed on the road to be made by the Sunbury and Erie Company, if the Susquehanna Company shall not also construct a road by the same route. We cannot read it thus without doing violence to the language and putting the common sense of the Legislature to open shame.

I am well aware that this minute criticism upon words and sentences is not the way to make a statute plain. My only reason for it is found in the vast amount of ingenuity expended on it in the argument of counsel. But, after all, the best argument is to hold up the law and let it speak for itself. The broadest, plainest, and most natural view we can take of it, is the one which brings us soonest to the truth. The majority of the Court have no sort of doubt that we are bound to regard the claim of the defendants as wholly unsustained.

We are not dealing with legislative grants which conflict, but we are deciding between two demands of a right to which one party has a title and the other not. The constitutional question, whether the Legislature would have a right to authorize the making of a second road, does not arise, because no such authority has been given. When an interference with the rights of a railroad company like the one complained of here, is altogether without authority of law, we think the injured corporation has a right to all the relief which equity can give.

I will close by briefly recapitulating. It is very improbable that the Legislature intended these two companies to make two roads over the same ground. The right of the Susquehanna Company is plainly granted and is not denied. The supplement to the Sunbury and Erie Company must be construed strictly, not only

[Packer *v.* Sunbury and Erie Railroad Company.]

because that is the rule for all public grants, but because this particular grant cannot be supposed to have been intended. But while the strictest construction is the only proper one, no interpretation could be latitudinary or loose enough to give it the meaning which the defendants insist upon. The Susquehanna Company has the right to make the road, provided they commence and finish it within the time limited by law; and the Sunbury and Erie Company have no authority given them for that purpose, unless the other Company shall fail.

> And now, to wit, on the 27th day of July, 1852, on reading the bill of complaint, and affidavits filed in this cause, and on argument of counsel for both parties, the Court order that the Sunbury and Erie Railroad Company, and all and every one of its officers, agents, workmen, and servants, be strictly and firmly enjoined and commanded that they do absolutely cease and desist from all further prosecution of the work, and from all the acts and doings complained of in said bill, until the final hearing and determination of this cause, and that a writ of injunction be issued upon the plaintiffs giving bond in the sum of $10,000, according to the statute in such case made.

WOODWARD, J., dissented.