# APPEAL OF PITTSBURGH JUNCTION R. CO.

[ALLEGH. V. R. Co. v. PITTSB. JUNCTION R. Co.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 12, 1885—Decided October 4, 1886.*

1. Section 2, act of June 19, 1871, P. L. 1361, relating to the crossing of lines of railroads by other railroads, is inapplicable where one company seeks to run its line through the yard of another company, and to cross

---

* This case, though ordered to be reported when it was decided, before the present reporter's time, seems to have been overlooked. It is reported here at the request of counsel and on account of its relation to the case following, but with an insufficient supply of paper books.

yard tracks and switches of the older company therein, as mere incidents, to the use of its main line.

2. While the franchises of a corporation are property and may be taken under the power of eminent domain, yet when property has already been taken for one public use, it cannot be taken by another corporation for another use, except by express grant or by necessary implication.

3. This rule is not confined to the tracks or rights of way of a railroad company, but it applies also to the grounds occupied by all the appliances necessary for the successful operation of the road, and a company has the right to construct its road and make its plans with a liberal consideration of future as well as of existing necessities.

4. But no implication can arise in favor of the right of one corporation to take the franchise of another, under the right of eminent domain, unless arising from a necessity so absolute that without it the grant itself would be defeated,—not from a necessity created by the corporation for its own convenience or for the sake of economy.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 220 October Term 1885, Sup. Ct.; court below, No. 88, September Term 1883, C. P. No. 1 in Equity.

On June 19, 1883, The Allegheny Valley Railroad Company filed a bill in equity against the Pittsburgh Junction Railroad Company. A preliminary injunction prayed for having been awarded, and answer and replication filed, *Mr. Samuel C. Schoyer* was appointed examiner and master, whose report filed on October 3, 1885, showed the controversy between the parties to be as follows:

The plaintiff company claims to be a railroad corporation created and existing under the laws of the commonwealth of Pennsylvania; that it has owned and operated a line of railroad for thirty years, extending from the city of Pittsburgh. in this county, to Oil City in the county of Venango, and by various connections to Buffalo, in the state of New York. It. claims to own certain property in the city of Pittsburgh by purchase from the United States government, bounded on the south by the Allegheny Arsenal property, and on the north by the Allegheny river, and extending from Thirty-ninth to Fortieth streets. It also claims to own, in fee simple, certain other property in the city of Pittsburgh, extending from Forty-third to Forty-seventh streets, and from an unnamed street on the south, to low-water mark on the Allegheny river on the.

north, most of which it claims to have acquired some thirty years ago for the purpose of a yard, and all of which it claims to have had in constant daily use in connection with the operation of its railroad. It alleges that the defendant company, on June 9, 1883, entered upon the above mentioned property with force and violence, and with a force of men proceeded to dig thereon and lay ties and rails, and tear up one track that had been used by plaintiff for at least fourteen years; this without right on the part of the defendant company. It further claims that the entry upon the plaintiff's property, between Forty-third and Forty-seventh streets, was in plain violation of the authority of this court, as the right of the said defendant company to interfere with said property was pending before a master of this court, upon a bill filed by said defendant company, against the plaintiff company, at No. 250 March Term 1882. It also alleges that if the defendant company be permitted to continue its entry on the plaintiff's said property, it will result in irreparable damage to the plaintiff; that it will seriously interfere with and cripple the operation of its road and the transportation of freight and passengers thereon, will undermine and ruin its road-bed and tracks, now in use, and render it unable to perform the duties by law imposed upon it towards the public. It denies that the defendant company has any authority in law, either under its charter or under legislation, state or municipal, to enter upon, take or appropriate said property, which has already been devoted to public use; that it has any title to said property, or that there is any necessity for the defendant company to so construct a railroad as to interfere with its property rights. The plaintiff further denies that said defendant company has complied with the requirements of §§ 4 and 5 of the act approved April 4, 1868, P. L. 62, so as to authorize it to carry into effect the object named in the articles of association, and that it is not entitled in law to exercise the rights of a railroad company, and prays:

1. That now, by preliminary injunction, to be made final hereafter, the said defendant company, its officers, agents, employees and servants, be restrained and enjoined from trespassing or entering upon, or in any wise interfering with the said properties hereinbefore described, or any part thereof, and

from digging thereon or laying down ties and rails thereon, or from exercising any rights of ownership thereover.

2. That it may be decreed that said defendant company has no right in law to enter upon and appropriate, or in any wise interfere with the said described property, or any part thereof, but that the title thereto and the exclusive right of occupancy thereof, as a whole, is in the plaintiff company.

3. Other and further relief.

Upon this bill, on June 22, 1883, the court granted the preliminary injunction prayed for, restraining the acts complained of in the bill.

The defendant claims to be a corporation duly formed by the consolidation of the Pittsburgh Local Railroad Company and the Pittsburgh Junction Railroad Company, both formed under and by virtue of the provisions of the general act of assembly, approved April 4, 1868, P. L. 62, and its several supplements. The former was incorporated on September 20, 1880, and the latter August 6, 1881. That the articles of consolidation and merger were filed in the office of the secretary of the commonwealth of Pennsylvania, on December 29, 1881 ; that the termini of the Pittsburgh Local Railroad Company between which it was authorized to locate, construct and operate a railroad for public use, were from a point at or near the foot of Grant street, in the city of Pittsburgh, to a point at or near the foot of Fifteenth street in said city ; that the termini of the Pittsburgh Junction Railroad Company between which it was authorized to locate, construct and operate a railroad for public use, were from Bennett's Station, on the Pittsburgh & Western Railroad, to Laughlin Station on the Pittsburgh & Connellsville Railroad, in the Fourteenth ward, of the city of Pittsburgh ; that in 1881, the Pittsburgh Local Railroad Company resolved and pledged itself to construct a branch from its main line at or near Fifteenth street, in the city of Pittsburgh, to Negley's run, in the Nineteenth ward of said city, and duly located, surveyed, plotted, accepted, and adopted said branch line, and thereby secured the right and legally bound itself to construct said line ; that the Pittsburgh Junction Railroad Company resolved and pledged itself on October 3, 1881, to construct a branch railroad from its main line at or near Thirty-

sixth street, in said city, along the bank of the Allegheny river to Negley's run aforesaid, and from Thirty-sixth street along said river to a point at or near Eleventh street in said city; that said Junction Railroad Company surveyed, located, fixed, marked and determined a route for said branch along the left bank of the Allegheny river near high-water line, between the points aforesaid, which location was approved of and adopted by said company, on October 14, 1881, whereby said company secured the right and legally bound itself to construct and operate for public use the said branch railroad; that the councils of the city of Pittsburgh by an ordinance approved by the mayor of said city dated November 30, 1881, authorized and empowered the said Junction Railroad Company to enter upon and locate a railroad of standard gauge on the above described location, across, upon and along all the public streets and highways intersecting or interfering with said described route, a plan of which is on file in the city engineer's office; by reason whereof the defendant insists it has the lawful right, power and authority, and is legally bound to construct and maintain said road.

The defendant avers that the property of complainant between Thirty-ninth and Fortieth streets, extends in width only from the arsenal property on the south to low-water mark on the main shore of the old inner channel of the Allegheny river, lying between said shore and Wainwright's Island, as fixed by the act of assembly of April 15, 1858; and that the defendant has the lawful right and title to the property between Thirty-ninth and Fortieth streets from the present water line of the Allegheny river, up to low-water line above mentioned, and charges the complainant with using and occupying the portion of the property of the defendant lying outside of low-water line, and denies any agreement between the officers of the plaintiff and defendant company in reference thereto. The defendant denies that it entered on the plaintiff's property between Thirty-ninth and Fortieth streets. The defendant also denies that the property of complainant between Forty-third and Forty-seventh streets extends to the Allegheny river, but it avers that it extends on the north side thereof only to the south line of Water street, a public highway extending along the bank of said river between said streets dedicated to

and actually used by the public for a long time; and further denies that all the said property is used by the plaintiff in connection with the maintenance and operation of its railway, or that all of it is indispensable to such use. The defendant admits that it commenced the construction of a branch on the property between Forty-third and Forty-seventh streets, but denies that the work done, or which it intends doing, is on complainant's property, or that it will irreparably damage the complainant, or the construction of any of its necessary improvements. The defendant also denies that such action on its part is any violation of the authority of this court, or that there is any question before the court as to its right to occupy the land between said streets not the property of the complainant. The defendant further denies that the construction of its road will result in the damages claimed by the plaintiff to its road-bed, or cripple the operation of its road, and prays:

1. That it may be ordered, adjudged and decreed, that it has the lawful right, power and authority to take and appropriate the property mentioned in complainant's bill for the location and construction of its highway aforesaid upon the route described, and

2. That it be dismissed, etc.

The questions arising under these claims and bearing upon which a vast amount of testimony has been taken are briefly:

1. The corporate rights of the parties.

2. The extent of the property rights of the complainant under the purchase from the United States government.

3. The extent of the property rights of the plaintiff company between Forty-third and Forty-seventh streets.

4. The location and time of location of defendant company's line, the condition of the ground and improvements thereon between Forty-third and Forty-seventh streets at the time of location.

5. The time of construction of plaintiff's yard as it is at present; its extent, its use and necessity for the plaintiff's present and future business.

The master then discussed the testimony, and the questions

of law arising, and, citing 1 Rorer on Railroads, 295; Penn. R. Co.'s App., 93 Pa. 151; Cake v. Railroad Co., 87 Pa. 307; Housatonic R. Co. v. L. & H. R. Co., 118 Mass. 391; Boston & M. R. Co. v. Lowell & L. R. Co., 124 Mass. 369; Lake Shore & M. S. Ry. v. N. Y. C. & St. L. Ry. Co., 8 Fed. R. 858; St. Paul Depot Co. v. St. Paul, 30 Minn. 359; Pet. of C. & P. R. Co., 2 Pittsb. 351; Commonwealth v. E. & N. E. R. Co., 27 Pa. 354; C. & P. R. Co. v. Speer, 56 Pa. 333; Packer v. Sunb. & E. R. Co., 19 Pa. 211; Springfield v. Com. R. Ry., 4 Cush. 63; Boston Water Power Co. v. W. & B. R. Co., 23 Pick. 360; Turnpike v. Union Ry. Co., 35 Md. 230; B. & O. R. Co. v. P. W. & K. R. Co., 10 Am. & E. R. C. 443; Rochester Water Com'rs, 66 N. Y. 418; Buffalo City, 68 N. Y. 167; East St. L. Conn. Ry. Co. v. East St. L. U. R. Co., 17 Am. & E. R. C. 163, proceeded:

After carefully considering all the testimony in the case, as well as all the questions of law arising, my conclusions are as follows:

1. That the plaintiff is a railroad corporation, and has owned and operated a line of railway from Pittsburgh, in the county of Allegheny, to Oil City, in the county of Venango, for many years; that the plaintiff owned the right-of-way between Thirty-ninth and Fortieth streets, on the east and west, and from the Arsenal wall on the south, to low-water mark on the Allegheny river, on the north, and it also owned property in fee simple bounded by Forty-third and Forty-fourth streets on the east and west, and its railroad on the south, and Water street on the north.

2. That Water street was dedicated as a public street by Richard L. Ewalt, in 1844, and was the northern call in the deed to plaintiff company, that from Forty-fourth street up to Forty-seventh street the plaintiff owns all of the property lying between the said streets, bounded by the right-of-way on the south and low-water mark on the north.

3. That in October, 1881, the plaintiff had erected partly on Water street, near Forty-fourth, an ice house, and a track running in front of the ice house towards Forty-third street; partly on said Water street, a steam pump and a round-house in process of erection, and a track between the ice house and the river. There was also some filling done between the

round-house and the river, and in front of the ice house. In 1883 the plaintiff had, in addition to the buildings mentioned above, erected a coal chute at a cost of $4,687.60, and extended the filling along the river nearly the whole front of their property out to low-water mark, and had built a crib to sustain the same at a cost of $2,804.21. Also a coach and repair yard on this filling between the coal chute and the ice house. The ice house and the coal chute and the coach and repair yards are necessary and useful.

4. Defendant is a railroad corporation duly organized under the act of 1868, and was authorized and empowered to build a railroad from Laughlin station on the Pittsburgh & Connellsville Road in the Fourteenth ward of the city of Pittsburgh, to Bennett's station, on the Pittsburgh & Western Road from the city of Allegheny, which said line is constructed and in operation.

5. That on October 3, 1881, the defendant company resolved and agreed to construct a branch railroad from its main line at or near Thirty-sixth street. in the city of Pittsburgh, along the bank of the Allegheny river to a point at or near the mouth of Negley's run aforesaid, and also to construct a like branch from the point aforesaid along the Allegheny river to a point at or near Eleventh street in said city, which branch road has been partly constructed and is in operation.

6. That on October 18, 1881, the defendant company located the route of said branch road from Thirty-sixth street eastwardly to Negley's run, which said branch has been completed to Forty-third street; that the company located the said line between Forty-third and Forty-seventh streets along the river front of plaintiff's property partly on Water street, dedicated in the deed of Richard L. Ewalt in the year 1844, and thence across, along and over the property of plaintiff to Forty-seventh street. That at the time of said location there were no improvements of plaintiff on the said location, or interfered with by it, excepting the tract marked O on plaintiff's plan A, extending in front of the ice house and between the ice house and Forty-third street.

7. That the coal chute erected by plaintiff, as finished in 1883, is greatly in excess of their present or any probable future necessity, and might be reduced on the river front one

third. That the coach and repair yards are greater than the present necessities require, but not greater than they may require in the future.

8. That defendant company's line could be built on the location as proposed in defendant's exhibit AA, and marked thereon "Proposed new location of the Pittsburgh Junction Railroad Company," without any interference to the plaintiff in its franchises or in the practical working or operation of its railroad, and said location will require the removal of but nine feet of plaintiff's coal chute and a slight change in the position of the tracks of plaintiff's coach and repair yards, by moving them closer to the engine house, which would not lessen their capacity. That the line located by the defendant company in October, 1881, and filed with their bond at No. 24 September Term, 1883, would, by the improvements subsequently erected by plaintiff, necessitate a grade crossing at the coach and repair yard as well as the removal of a portion of the coal chute.

9. That the trackage and siding facilities of plaintiff company already constructed are ample for their present business, and those proposed to be constructed would be ample for their necessity for years to come.

10. That the object of the construction of the defendant company is to give the extensive manufactories on the proposed line a competing line of railroad, and also to connect them with the Baltimore & Ohio, Pittsburgh & Lake Erie, and other railroads in the city of Pittsburgh, thereby avoiding the necessity of transferring to said roads by team. That there is no other reasonably practicable route on the said line on which defendant's road could be built to its terminal point, Negley's run.

11. That defendant company commenced the actual construction of its line on June 9, 1883, and laid a track between Thirty-ninth and Fortieth streets, alongside of plaintiff's right-of-way; that said track is outside of plaintiff's property line. That defendant also laid a track a short distance from Forty-third street, at the same time crossing track O of plaintiff on Water street, running in front of the ice house and between the ice house and Forty-third street.

12. That defendant company can construct its said branch

railroad upon the line as located by it in October, 1881, and covered by the bond at No. 24 September Term 1883, with a right-of-way not exceeding 30 feet in width between Forty-third and Forty-seventh streets, in the manner shown upon defendant's exhibit II, in evidence, without seriously impairing or interfering with the proper and reasonable exercise of any of the franchises of plaintiff company. And further, that such location would necessitate a grade crossing to reach the plaintiff's property between the said line of defendant company and the river, and also at the coach and repair yards of the plaintiff, constructed since the location was made, which grade crossing, under the act of June 19, 1871, P. L. 1361, should, if practicable, be avoided.

The master then recommended a decree that the defendant company had the lawful right, power and authority to take and appropriate a right-of-way for its branch railroad 24 feet wide, across the property of the plaintiff company, between Forty-third street and Forty-seventh street in the Seventeenth ward; that said right-of-way should be located of the said width between the points aforesaid, upon the line and in the manner proposed and shown upon the plan of said defendant marked exhibit AA; that previous to entry the defendant should file its bond with two sufficient sureties in $20,000, conditioned for the payment of all damages, etc.; and that, upon the filing of said bond and the approval thereof by the court, the preliminary injunction theretofore granted herein should be dissolved.

Many exceptions filed by the plaintiff in the bill to the report of the master were overruled by him and filed with his report. These exceptions having been argued, the court, STOWE, P. J., on October 21, 1885, filed the following opinion and decree:

I am unable to appreciate the position taken by defendant's counsel in this case in regard to the questions involved here being governed by the law relating to what are known as "crossing cases." It seems to me that the case is wanting in every essential element incident to such cases. There is no attempt, literally speaking, to cross the line of plaintiff's railroad,

but only a portion of the ground and tracks used by the railroad for yard purposes as distinct from the line of road itself. But more than all, the attempt is not simply to cross the yard and tracks with a common use, but absolutely to take from plaintiff a portion of their yard for the sole use of defendant. The issue is not in what mode defendant shall cross plaintiff's property, but solely whether it can cross at all. The right of a railroad company to corporate rights being established or admitted, the right to cross if necessary or convenient in reaching its terminus is absolute, and the court can only ascertain the mode. But the court must inquire and ascertain whether unnecessary injury will be done by crossing in the manner proposed, and also whether a grade crossing can reasonably be avoided, and decree accordingly: P. & C. R. Co. v. S. W. P. R. Co., 77 Pa. 187. No such issue was made in this case, and nothing suggested in the decree recommended by the master determines these questions.

As I understand the bill and answer, and the proceedings taken thereunder, the sole question for our consideration is whether the evidence shows that the defendant has a right to appropriate and take for the exclusive use of its railroad track a portion of the ground belonging to plaintiff, used by it for general railroad purposes, and claimed to be reasonably necessary for the present or future use of plaintiff for such purposes. It is argued by plaintiff that the only question which should be determined in this proceeding is as to the right of defendant to take the ground appropriated and claimed by it at the time this bill was filed, and that the court has no right to inquire whether the defendant may not have the right to appropriate some other portion of the defendant's yard property. As, however, the bill puts in issue the defendant's right to take or not, the defendant, having hereafter taken the proper steps thereto, may have the legal right to appropriate any of plaintiff's land for its use, and if it appeared from the evidence that defendant had such a right, it could be determined here by our decree.

The question now arises, what do the facts in evidence show in regard to this view of the case?

It appears that the plaintiff is a railroad company, duly incorporated and operating a line of road from Pittsburgh to

Oil City, in the county of Venango, extending, with various connections with other roads, to Buffalo, New York, and that it has been in operation some 30 years; that in 1853 it purchased for its use for railroad purposes all the property lying between Forty-third and Forty-seventh streets, Pittsburgh, bounded by the right of way on the south and low water on the north, and, for many years prior to the incorporation of defendant company, has used in a general way the whole of it for what is called a "yard," having therein a round-house, tracks, ice house and other structures incident to ordinary railroad use; and that after the incorporation of defendant and the location of its line through this property many changes have been made in the arrangement of these structures which it appears had been contemplated to a greater or less extent before this controversy arose, but which defendant claims were unnecessary and erected for the purpose of prejudicing its claim. It is quite likely that the attempt to take a portion of plaintiff's property did greatly expedite these improvements, but the evidence utterly fails to show that it was done for the purpose claimed by defendant.

As to the present necessity for the whole of the ground now occupied by plaintiff, the evidence of course is conflicting. The defendant's engineer thinks there is no present need for the accommodations plaintiff has provided itself with, while the testimony of the plaintiff is positively the other way, but all seem to agree that all of the appliances, with the exception of a part of the coal arrangements will be needed in the future. The defendants, however, urged that even assuming all their structures to be necessary, they could by a change of location be so arranged as to answer plaintiff's purpose just as well for all time to come, and still leave room enough for defendant to build its tracks along the river bank as indicated by a plan proposed by its engineer. The master finds that "it does not appear that the original location (by the company), would have interfered in any way with any of the essential franchises of plaintiff, or with the operations of its railroad, and that defendant might well have insisted upon such location." This seems to me clearly wrong, but if correct it should have been followed by a decree to that effect. But this conclusion was not even suggested. On the contrary, the master finds that

another route, suggested by defendant's engineer, but, so far
as appears, without any authority from the board of directors,
would answer defendant's purposes, and recommends that it
be decreed to take that. Without stopping to criticise the
form of decree recommended, even if the defendant may have
a right to take the route suggested, if it desired to do so, [I
think the evidence fails to show with any degree of satisfaction
that such a route could be adopted without doing the plaintiff
serious injury to its future operations.] [4] A special reference
to the evidence, and reasons for so concluding would be now
out of the question for want of time, and perhaps be of little
account when done, and I therefore content myself with stat-
ing my conclusions.

[Upon the whole, then, I am of the opinion that the defend-
ant has failed to show that either the so-called " original "
location or the one proposed by the master, will not take
ground and destroy structures reasonably necessary for the
future wants of plaintiff for proper railroad purposes.] [5]  That
the defendant can reach Negley's run, the proposed terminus,
without going through plaintiff's yard, as a mere question of
engineering, can admit of no doubt. That it would be ex-
tremely expensive is equally clear. [But I do not understand
that one railroad company is to be deprived of its rights and
franchise simply because another wants to build another and
competing road, which otherwise will cost more than the latter
can afford to pay.] [6]  While competition is to be encouraged,
corporate rights are to be maintained. I think, with judge
McKennan, that "every reasonable intendment should be
made in favor of the primary rights of the complainant in
such cases as this, at the points of the alleged conflict. No
actual encroachment upon these rights can be sustained or
allowed, and, in measuring their extent, there must be a liberal
consideration for the future as well as for the present necessities
of the complainant; the use of existing tracks, the construction
of additional ones, the convenient storage of the freight at all
seasons, and the unembarrassed transaction of its business : "
L. S. & M. S. R. Co. v. N. Y. C. & St. L. R. Co., 8 Fed. R.
858.   The argument that it is necessary to have this property,
because without it there is no other reasonably practicable
route, can have no weight in the consideration of this case.

[The necessity, if any there is, is of defendant's own making. It projected the road with its eyes open; it knew, or ought to have known, the difficulties in its way to reach the proposed terminus, and, when it located its road, that the proposed route would materially interfere with precedent rights of plaintiff.] [7]

The exceptions to the master's report are sustained so far as the same are consistent with the views herein set forth. So far as inconsistent they are overruled and it is now ordered, etc., that the preliminary injunction heretofore granted be made perpetual, and that defendant pay the costs.

Thereupon the defendant company took this appeal, and assigned as error, inter alia:

1. The decree ordering that the preliminary injunction be made perpetual.

4–7. The portions of the opinion embraced in [ ] [4 to 7]

*Mr. Johns McCleave* and *Mr. Geo. Shiras, Jr.*, for the appellant:

1. The road the defendant seeks to construct, in this case, is a branch from its main line which it deems necessary in order to increase its business and to accommodate the trade and travel of the public, and it is strictly within the authority given by §§ 10, 11, act of February 19, 1849, P. L. 83, and § 9 of the supplemental act of April 4, 1868, P. L. 62. The powers with reference to the construction of such branches, must be construed to be the same as with reference to the construction of a main line: West Penn. R. Co.'s App., 99 Pa. 163; Pittsburgh v. Penn. R. Co., 48 Pa. 355; C. & P. R. Co. v. Speer, 56 Pa. 325; Getz's App., 10 W. N. 456.

2. We have only to look at the words of the act of 1849, to see that this right of eminent domain is given over all lands, because the power to select such route "as they may deem expedient" is given, and the right thereon "to lay down, erect, construct and establish a railroad." There are only four *express* restrictions limiting the universality of this power. The exceptions are: first, a burying-ground; second, a place of public worship; third, a dwelling-house in the occupancy of its owner or owners; fourth, the width of the right-of-way, with certain exceptions, not to exceed sixty feet. These are

the only *express* exceptions out of the power given.   Lands already devoted to a public use are not one of them.   If there are any lands in the commonwealth, other than those just mentioned, not subject to the power given, it must be *by inference* and not *by express words*, that they have been excluded.

3. Therefore, the rule invoked by the plaintiff to exempt its property from the right of appropriation to public use, does not rest upon any express provisions of the statutes, nor upon the idea that the language of the statute constituting the defendant's charter, is not broad enough to include any property howsoever used or devoted or by whomsoever held.   On the contrary, it is but an inference and a presumption raised by contemplating the effect of the application of the language to a particular subject matter; and in order to give rise to this implication restricting the breadth of the grant, the result of the application of the power must be the total destruction, or in a great degree the defeat, of the prior public use : Boston Water Power v. Boston & W. R. Co., 23 Pick. 360 ; Springfield v. Conn. R. Ry. Co., 4 Cush. 63 ; P. W. & B. R. Co. v. Philadelphia, 9 Phila. 563 ; Plan of Kensington, 2 R. 445 ; Turnpike v. Union Ry. Co., 35 Md. 230.   Such result must be established by proof, before the implication restricting the general language of the act arises.   The burden is on the plaintiff to establish it, and until it is established the rule which the plaintiff here invokes does not arise : Packer v. Sunb. & E. R. Co., 19 Pa. 211 ; Penn. R. Co's App., 93 Pa. 150 ; Commonwealth v. Erie & N. E. Ry. Co., 27 Pa. 354 ; C. & P. R. Co. v. Speer, 56 Pa. 325.

4. Where the franchises of a company are untouched, and the claim is simply to a right-of-way across the track of a railroad company, such company occupies no higher ground than the common land owner : Morris & E. R. Co. v. Central R. Co., 2 Vroom 205 ; L. M. & C. & X. R. Co. v. Dayton, 23 O. 510 ; N. Y., H. & N. R. Co. v. B. H. & E. R. Co., 36 Conn. 196 ; B. & O. R. Co. v. P. W. K. R. Co., 10 Am. & E. R. C. 444 ; N. Y. C. & H. R. Co. v. Gas Light Co., 63 N. Y. 334 ; Rochester Water Com'rs, 63 N. Y. 418 ; The City of Buffalo, 68 N. Y. 167 ; East St. L. Con. Ry. Co. v. East St. L. U. Ry. Co., 108 Ill. 265 (17 Am. & E. R. C. 163) ; Chicago etc. R. Co. v. Joliet etc. R. Co., 14 Am. & E. R. C. 62 ; Peoria etc. R.

Co. v. Peoria & F. R. Co., 105 Ill. 110 (10 Am. & E. R. C. 129); N. Car. R. Co. v. Carolina Cent. R. Co., 83 N. C. 495; Tuckahoe Canal Co. v. Tuckahoe R. Co., 11 Leigh 75; Morgan v. Louisiana, 93 U. S. 217. It follows that when the application of the power will not "wholly or in a great degree" defeat the prior public use, but will leave the complainant company in possession of all its franchises, and in the fair and reasonable use of the same, such restricting implication does not arise, and the general language of the statute will be left to its plain and obvious meaning.

5. Aside from the general power given by § 10, act of 1849, there is also express and specific authority for the appropriation attempted, to be found in § 1, article XVII., of the constitution; § 10, act of April 4, 1868, P. L. 62; and in § 2, act of June 19, 1871, P. L. 1361, providing that "When such legal proceedings relate to crossings of lines of railroads by other railroads, it shall be the duty of courts of equity of this commonwealth to ascertain and define by their decree the mode of such crossing which will inflict the least practicable injury upon the rights of the company owning the road which is intended to be crossed; and, if in the judgment of such court, it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade."

*Mr. John H. Hampton* and *Mr. John Dalzell*, for the appellee:

1. Upon the facts as found by the court below and even as found by the master, we submit that the appellant has no right in law to enter upon and appropriate or in any wise interfere with the property of the plaintiff. The lands, or right-of-way, occupied by one railroad company for its corporate purposes, cannot be taken as right-of-way by another railroad company, except for mere crossings, and then only for crossing purposes, and not for exclusive occupancy: 1 Rorer on Railways, 295 n.: Penn. R. Co's App., 93 Pa. 151; Cake v. Railroad Co., 87 Pa. 311; Housatonic R. Co. v. Railway Co., 118 Mass. 391; Boston etc. R. Co. v. Railroad Co., 124 Mass. 368; Dublin etc. Ry. Co. v. Navan, I. R. 5 Eq. 393; Lake Shore etc. R. Co. v. Railroad Co., 8 Fed. R. 858; Prospect Park etc. R. Co. v. Williamson, 91 N. Y. 552; St. Paul U. Depot Co. v. St. Paul, 30 Minn. 359; Central City Ry. Co. v. Railway Co., 81 Ill. 523; Alex-

andria etc. Ry. Co. v. Railway Co., 10 Am. & E. R. C. 23; Hicock v. Hine, 23 Ohio St. 523; Contra Costa Ry. Co. v. Moss, 23 Cal. 324; C. & P. R. Co.'s Pet., 2 Pittsb. 348; Springfield v. Conn. R. Ry. Co., 4 Cush. 63; Commonwealth v. Combs, 2 Mass. 492; West Boston Br. v. Middlesex, 10 Pick. 271; Boston Water Power Co. v. Railroad Co., 23 Pick. 397; United States v. Chicago, 7 How. 195; West River Br. v. Dix, 5 How. 543, 544.

2. This rule applies not only to the right of way of the company, but also to the ground occupied by all its appliances necessary for the successful operation of the road: Philadelphia etc. Ry. Co. v. Williams, 54 Pa. 107; Dublin etc. Ry. Co. v. Navan, I. R. 5 Eq. 393; Prospect Park etc. Ry. Co. v. Williamson, 91 N. Y. 552; St. Paul U. Depot v. St. Paul, 30 Minn. 359; C. & P. R. Co. v. Speer, 56 Pa. 325; Boston etc. R. Co. v. Railroad Co., 124 Mass. 368.

3. It would make no difference that all the appropriation was not occupied for railway purposes at the time. The company has a right to consider the needs of the future, and to construct its road and make its plans with reference to those future needs: Lake Shore etc. R. Co. v. Railway Co., 8 Fed. R. 858; Philadelphia etc. R. Co. v. Williams, 54 Pa. 107; C. & P. R. Co. v. Speer, 56 Pa. 325; C. B. & Q. R. Co. v. Wilson, 17 Ill. 123. The cases cited in the argument for the appellant will, upon examination, be found to be generally either contests as to the occupation of streets, or as to crossings, or as to the occupation of land held by corporations not railroads, but of a private character. No one of them is authority for the proposition that exclusive occupancy by one railroad company of another railroad company's property, laterally will be permitted, when such occupancy takes land actually in use and needed by the latter company.

OPINION, MR. JUSTICE PAXSON:

This case has drifted from its moorings. Originally it was a bill filed in the court below by the Allegheny Valley Railroad Company against the Pittsburgh Junction Railroad Company, to prevent said company from taking, under the right of eminent domain, a portion of the property of the former company.

The plaintiff is a railroad corporation, owning and operating

a line of railroad extending from Pittsburgh to Oil City, and, by means of various connections, to Buffalo, in the state of New York, and has owned and operated the said line for upwards of thirty years. The defendant is a railroad corporation created and organized under the act of April 4, 1868, and its supplements. The plaintiff acquired the property in dispute long before the organization of the latter company, and uses it for the purposes of its yard. It is occupied with numerous tracks, coal trestles, ice house, round-house, and other buildings convenient and necessary for its business. The defendant is about constructing a railroad from its main line, at the foot of Thirty-sixth street, in the city of Pittsburgh, extending along the left bank of the Allegheny river to a point at or near the mouth of Negley's run, and also a like branch along the left bank of the Allegheny to a point at or near the foot of Eleventh street in said city. In pursuance of this object it surveyed and located a route through the plaintiff's yard, cutting through the coal yard, repair yard, and about twenty-four feet of the coal chute. Not being able to agree with the plaintiff the defendant filed its bond in the court below in accordance with the act of assembly. Whereupon the plaintiff filed this bill to restrain defendant from further proceeding to lay its track upon the location in question. The court below granted a preliminary injunction, and, upon final hearing, made the injunction perpetual.

Upon the hearing before the master the defendant abandoned its first location, and without any action on the part of its board of directors proceeded to re-locate its road through plaintiff's yard, with a view to obviate some of the objections of the plaintiff and lessen the injury and inconvenience to the business of the latter. The master proceeded to re-locate the road in accordance with the plan submitted by the defendant. He held that such action was justified under the act of June 19, 1871, which provides that if, "in the judgment of such court, it is reasonably practicable to avoid a grade crossing, they shall, by their process, prevent a crossing at grade." Upon exceptions to the master's report the court below held that the act of 1871 had no application, for the reason that it referred to railroad crossings alone, while this was not a case of crossing at all in the proper sense of the term. In this we think the

learned judge was clearly right. The act of 1871 relates "to crossings of lines of railroads by other railroads." There was no attempt here to cross the line of plaintiff's road. It was an attempt to run through the plaintiff's yard, and the crossing of some of its yard tracks and switches which were merely incident to the use of its main line. As was well observed by the court below: "The attempt is not simply to cross the yard and tracks with a common use, but absolutely to take from plaintiff a portion of their yard for the sole use of the defendant. The issue is not in what mode the defendant should cross plaintiff's property, but solely whether it can cross at all. The right of a railroad company to corporate rights being established or admitted, the right to cross, if necessary or convenient in reaching its terminus, is absolute, and the court can only ascertain the mode. But the court must inquire and ascertain whether unnecessary injury will be done by crossing in the manner proposed, and also whether a grade crossing can reasonably be avoided, and decree accordingly: P. & C. Railroad Co. v. S. W. P. Railroad Co., 77 Pa. 173. No such issue was made in this case, and nothing suggested in the decree recommended by the master determines these questions."

We might well stop here and affirm this decree. We are in no doubt, however, as to the main question. While the franchises of a corporation are property, and may be taken under the power of eminent domain, yet when property has been already taken for one public use, by a corporation, it cannot be taken by another corporation for another use, except by express grant or by necessary implication. The principle is well settled that "the lands or right-of-way occupied by one railroad company for its corporate purposes cannot be taken as right-of-way by another railroad company, except for mere crossings, and then only for crossing purposes, and not for exclusive occupancy:" Pennsylvania Railroad Company's Appeal, 93 Pa. 150; Cake v. P. & E. Railroad Co., 87 Pa. 307; Housatonic Railroad Co. v. L. & H. R. Railroad Co., 118 Mass. 391; Boston and M. Railroad Co. v. Lowell Railroad Co., 124 Mass. 368; Prospect Park and Coney Island Railroad Co. v. Williamson, 91 N. Y. 552; St. Paul Union Depot v. City of St. Paul, 30 Minn. 359; Central City Horse R. W. Co. v. Fort C. R. W. Co., 31 Ill. 523; Hicock v. Hine, 23 Ohio 523. This

rule is not confined to the track or right of way of the company, but also to the ground occupied by all the appliances necessary for the successful operation of the road: P. W. & B. Railroad Co. v. Williams, 54 Pa. 103; Dublin and Drogheda Railroad Co. v. Navan Railroad Co., Irish Reports, 5 Equity, 393; Prospect Park and Coney Island R. W. Co. v. Williamson, supra; St. Paul Union Depot v. City of St. Paul, supra. In C. & P. Railroad Co. v. Speer, 56 Pa. 325, it was said by Justice AGNEW: "A power to build side tracks is essential to the purpose and use of the road. A power to build a railroad of a single track, without the means of passing the trains or of leaving the track for the shifting of cars, or of repairs at the shops and yards, and without standing room for the cars not in motion, would be clearly wanting in all that is necessary to safety, convenience, and utility, and would be vain and nugatory." See, also, Boston and Maine R. Co. v. Lowell, supra.

It was urged, however, on the part of the defendant, that the yard of the plaintiff is larger than is necessary for its present use, and that it could be so re-arranged as to accommodate defendant's tracks and without serious detriment to the plaintiff, either in the present or the future. The evidence upon this point is conflicting, and we will not discuss it. The plaintiff contends that the arrangements of its yard cannot be changed without inconvenience and loss in the handling of its business, and that its area is not greater than will be required in the near future. We are of opinion that a railroad company has a right to consider the needs of the future, and to construct its road and make its plans with reference to those future needs. Upon this point the language of McKENNAN, J., in L. S. & M. S. R. Co. v. N. Y. C. & St. Louis R. Co., 8 Fed. R. 858, is sound and sensible: "Every reasonable intendment must be taken in favor of the primary rights of the complainant at the points of the alleged conflict. No actual encroachment upon these rights can be sanctioned or allowed, and in measuring their extent there must be a liberal consideration for the future, as well as the existing necessities of the complainant, the use of the existing tracks, the construction of additional ones, the convenient storage of its freight at all seasons, and the unembarrassed transaction of all its business."

Opinion of the Court.

We are not embarrassed with the question that would arise if the defendant company could not build its road without laying its track through the plaintiff's yard. The location claimed for defendant is a matter of economy, not of necessity. It can construct its road and reach its terminus by another route. It is true, it would be expensive, but it is a mere question of money and engineering skill. It is not entitled to run through the plaintiff's yard and cripple its facilities for handling its business, merely to save money. Upon this point the language of our brother GORDON, in Pennsylvania Railroad Company's Appeal, supra, is so clear and forcible that I may well repeat it here: "This plea of necessity is so frequently used to cover infractions of both public and private rights, that, prima facie, it is suspicious, and must be closely scrutinized, especially when it is used to carry corporate privileges beyond charter limits. This plea, in the first place, must be tested by the rule, now of universal acceptation, that all acts of incorporation and acts extending corporate privileges are to be construed most strongly against the companies setting them up, and that whatever is not unequivocally granted must be taken as withheld. This rule is to be taken in all its rigor when the attempt is so to construe a corporate grant as to interfere with a previous grant of the same kind: Packer v. The Railroad, 19 Pa. 211. It is true that a franchise is property, and as such may be taken by a corporation having the right of eminent domain; but in favor of such right there can be no implication, unless it arises from a necessity so absolute that, without it, the grant itself would be defeated. It must also be a necessity that arises from the very nature of things, over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience or for the sake of economy. To permit a necessity such as this to be used as an excuse for the interference with or extinction of previously granted franchises would be to subject these important legislative grants to destruction on a mere pretence, in fact, at the will of the holder of the latest franchise."

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

TRUNKEY, STERRETT and CLARK, JJ., dissent.

Dissenting opinion, Mr. Justice TRUNKEY:

I shall only indicate the ground of dissent.

This decree restrains the appellant from entering upon or in anywise interfering with the property of the appellee, situate between Forty-third and Forty-seventh streets, and from entering upon, working upon, or in anywise interfering with any property of the appellee between Thirty-ninth and Fortieth streets, and on the south side of low-water mark. It absolutely restrains the appellant from entering upon any part of said land to locate its road. It denies the appellant's right, even upon payment of damages or giving security therefor. The bill prayed for such decree. It denied the appellant's right to enter at all. The opinion of the court below shows the decree was intended to deny the right. That decree is now affirmed, and it matters not whether the location of the route was shifted after the filing of the bill, for the entry anywhere is restrained.

In this case the testimony clearly shows, and it was so found by the master, that there is ample room next the river where the appellant could lay its tracks without material injury to the property of the appellee. The inconvenience to and cost of changes by the appellee could be compensated in damages. The prudent appropriation of a parcel of land, extending from low-water mark on the river to the hillside, by the appellant, the whole of which land is not necessary for the uses of its road, ought not to bar the construction of another railway in the valley by a company subsequently chartered.