## The Philadelphia, Wilmington and Baltimore Railroad Company *versus* Williams.

1. The charter of the Philadelphia, Wilmington and Baltimore Railroad Company authorizes them, "*as soon as they conveniently can,*" to construct a road with one or more tracks, and to make and erect "such warehouses, &c., and all the works and appendages for the convenience of the said company for the use of said railroad." This gives the right to construct sidings, turnouts, stations, engine-houses and all works and appendages usual in the convenient operation of a railroad.

2. The expression "as soon as they conveniently can locate and construct," is not a limitation upon the power to compel the company to exercise its whole authority in the very beginning.

3. It is not the special use made of the property taken which characterizes it, but its convenient necessity for public use.

4. The charter giving power to take land, gives power to take a right of way over it, under the maxim, *Omne majus continet in se minus.*

5. The charter of the company provides for compensation for taking the right of way, and its owner may have a view to assess the damages whenever his right is directly injured by entry upon the land.

6. "Owners of such required land" includes all owners of titles in or growing out of the land, whose rights are capable of actual privation by taking.

7. The remedy for obstructing a right of way by a railroad track under this charter, is not by action denying the right of entry to take the land, but by application for the assessment of damages.

January 17th 1867.  Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ.  STRONG, J., at Nisi Prius.

Error to the District Court of *Philadelphia.*

This was an action on the case by Samuel Williams and Ellen his wife, in her right, against The Philadelphia, Wilmington and Baltimore Railroad Company.  The writ issued November 12th 1863.

The plaintiffs declared for an injury by the construction of a railroad track by the defendants across an alley over which the wife had a right of way and watercourse, as appertenant to a lot owned by her.

On the 10th of February 1862, Edward Brady conveyed to Mrs. Williams, in fee, a house and lot on the east side of Clement street, which extends northward from Prime street to Carpenter street, between Sixteenth and Seventeenth streets; the lot being 16 feet wide, and running back 46 feet eastwardly to a 4 feet wide alley leading southward to Prime street, "together with the free and common use, right, liberty and privilege of the said 4 feet wide alley, as and for a passage way and watercourse at all times hereafter, for ever, and subject to the payment of a proportionable part of the expenses of keeping said alley in good order and repair at all times hereafter for ever."

The lot was in the occupancy of a tenant. The injury complained of was a siding from the track of the company's railroad on Prime street across the alley to their engine-house and turn-

[Philadelphia, Wilmington and Baltimore Railroad Co. *v.* Williams.]

table, on a lot of ground divided from the Clement street lot by the alley.

The company claimed the right to construct the siding under their acts of incorporation and an ordinance of the city of Philadelphia. The acts referred to are the Act of April 2d 1831, incorporating the Philadelphia and Delaware County and Southwark Railroad Companies.

By sect. 10, the company are "authorized, as soon as they conveniently can, to locate and construct a railroad of one or more tracks from a point at or near the city of Philadelphia * * * to the Delaware state line, and to make, construct and erect such warehouses, toll-houses, carriages, cars and all other works and appendages necessary for the convenience of the said company in the use of the said railroad."

Sect. 11 authorizes the company to enter upon any land to explore, &c., and when the route shall be determined, "at any time to enter upon, take possession of, and use such land," subject to such compensation as might be agreed upon, or should be ascertained in the manner provided for.

By sect. 12. If the landowners cannot agree for the purchase of the land or damage, the Court of Common Pleas shall appoint twelve viewers, who shall "value the land occupied or required for such railroad or other works, and all damages which the owner or owners shall sustain, or may have sustained by reason of the construction of the said railroad and other works, taking into consideration the advantages as well as the disadvantages of the same to the said owner or owners."

The other was an act passed February 27th 1838, for "erecting a bridge over Conemaugh river and for other purposes," which authorized the company to lay a double track on Prime street.

The ordinance of the city gave the company power to lay tracks across Sixteenth street, to be opened according to the city plan, from Carpenter to Prime street, to car-houses to be erected on lots contracted to be purchased by them on Sixteenth street, so to be opened, so as to connect the lots with their track on Prime street.

The court directed the jury to find for the plaintiffs, reserving the question whether the Acts of Assembly and ordinance given in evidence made out a defence.

The jury found for the plaintiffs; damages $1.

The court below (Hare, A. J.) afterwards directed judgment to be entered on the reserved point for the plaintiffs.

The company, plaintiffs in error, assigned for error the entering of judgment for the plaintiffs below.

*J. C. Gowen*, for plaintiffs in error.—The Act of Incorporation gave authority to make all works and appendages necessary

for the company's convenience in the use of their road. The authority was not exhausted when this track was laid. The works and appendages are such as may from *time to time* become necessary: Railroad Co. *v.* Wilson, 17 Ills. 124; Lehigh Navigation Co. *v.* Beaver Meadow Railroad (S. C. 1864, per Woodward, C. J.); New York and Erie Railroad *v.* Young, 6 Casey 175. The right of entry and appropriation was not impaired by omission to make compensation. The charter was granted in 1831, and is therefore not affected by Article VII. § 4 of the constitutional amendments of 1838. The prohibition of Article IX. § 10 of the constitution, against taking private property for public use, is not broken when an adequate remedy is provided: Pittsburg *v.* Scott, 1 Barr 309; Rogers *v.* Broadhead, 20 Johns. 735; Bloodgood *v.* M. & H. Railroad, 18 Wend. 17; Kensington *v.* Hood, 10 Barr 93; Jerome *v.* Ross, 7 Johns. Ch. R. 343; Whelock *v.* Pratt, 4 Wend. 650.

The compensation provided for is to be after the appropriation of the land.

The company's interference with the way was not unauthorized, if there had been no remedy. The railroad is a public highway, and the allowance of 6 per cent. in grants from the Commonwealth was compensation: Workman *v.* Mifflin, 6 Casey 362; McClenachan *v.* Curwin, 3 Yeates 362; s. c., 6 Binn. 509; Fene *v.* Meily, Id. 153; Harvey *v.* Lloyd, 3 Barr 336.

Here nothing has been *taken* from the plaintiff; the track is at most an annoyance: Sharpless *v.* Philadelphia, 9 Harris 166; Philadelphia and Trenton Railroad Co., 6 Wh. 46; Monon. N. Co. *v.* Coons, 6 Id. 116; Pittsburg *v.* Scott, 1 Barr 314; Callender *v.* Marsh, 1 Pick. 418; Charles River Bridge *v.* Warren Bridge, 7 Pick. 344; Henry *v.* Pittsburg & Allegheny Bridge Co., 8 W. & S. 85; Watson *v.* Railroad, 1 Wright 479.

[During the argument Woodward, C. J., referred to Harvey *v.* Lacka. & Bloomsburg Railroad, 11 Wright 428.]

*J. Samuel,* for defendants in error.—Acts of incorporation are in derogation of private right, and are to be strictly construed against the grantees: Webb *v.* Manch. Railroad, 1 Railway Cases 599; 4 Id. 560; Scales *v.* Pickering, 4 Bing. 448; Blackman *v.* Glamorgan Can. Co., 1 M. & K. 162, 1 M. & P. 195, 2 Scott N. R. 337; Shelford 67; Charles River Bridge *v.* Warren Bridge, 11 Peters 543; Dartmouth College *v.* Woodward, 4 Wheat. 636; Bank of United States *v.* Dandridge, 12 Id. 64; Stormfeltz *v.* Manor Turnpike Co., 1 Harris 500; Commonwealth *v.* N. L. Gas Co., 2 Jones 318; Commonwealth *v.* E. & N. E. Railroad, 3 Casey 339.

[Philadelphia, Wilmington and Baltimore Railroad Co. *v.* Williams.]

The rights of this charter are to enter upon and use *land*, which does not include a right to obstruct a way: Brockett *v.* Ohio & Penna. Railroad, 2 Harris 241; 2 Bl. Com. 17, 19; Savil *v.* Savil, Fort. 351; Westfaling *v.* Westfaling, 3 Atk. 464; Ca. Temp. Talb. 143; Bradshaw *v.* Ploughman, 1 East 441; Goodtitle *v.* Otway, 8 Id. 357; Black *v.* Hepburne, 2 Yeates 331; Lefevre *v.* Lefevre, 4 S. & R. 243; Workman *v.* Mifflin, 6 Casey 371; Voegtly *v.* Pittsburg Railroad, 2 Grant 245; Act of Incorporation, April 2d 1831, § 14; General Railroad Act, Feb. 19th 1849, § 12, Purd. 840, pl. 17; Pamph. L. 84; Acts of March 20th 1845, § 1, Purd. 845, pl. 43, Pamph. L. 191; April 12th 1851, § 2, Purd. 844, pl. 42, Pamph. L. 518.

If the act gives power to obstruct the way, it is unconstitutional: Constitution, art. 10, § 10.

An adequate remedy must be provided upon an adequate fund: Bloodgood *v.* Railroad, 18 Wend. 18; Yost's Report, 5 Harris 532. A right of way is property: Monon. Nav. Co., 6 W. & S. 101; Barclay Railroad *v.* Ingham, 12 Casey 194; Lehigh V. Railroad *v.* Trone, 4 Casey 206; Pittsburg *v.* Scott, 1 Barr 309; Commonwealth *v.* E. & N. E. Railroad, 3 Casey 339.

The 6 per cent. allowance does not apply to Philadelphia, which was laid out by Penn and provision made for streets.

*J. E. Gowen*, for plaintiff in error, in reply.—Workman *v.* Mifflin recognised the allowance of 6 per cent., and it was a case in Philadelphia. He cited, further, McLaughlin *v.* Railroad, 5 Richardson 583.

The opinion of the court was delivered, May 13th 1867, by

AGNEW, J.—A parcel of ground adjacent to Prime street and Washington avenue was laid out into lots extending from Washington avenue up Clement street, leaving a strip four feet wide in the rear of the lots to be used by the lot owners as a passage out to Washington avenue. The deed conveying to Mrs. Ellen Williams one of these lots (No. 1023), granted also the free and common use, right, liberty and privilege of said four feet wide alley as and for a passage-way, and watercourse at all times hereafter for ever, and subject to the payment of a proportionate part of the expenses of keeping said alley in good order and repair at all times hereafter for ever. The declaration of the plaintiff was in trespass on the case, alleging as the injury the construction of the defendants' railroad track crossing the four feet wide alley, and obstructing Mrs. Williams' right of way and watercourse. The track in question was a turnout and siding from the defendants' main track on Washington avenue to their engine-house, built upon a lot of their own near Washing-

ton avenue, and adjoining the four feet alley on the opposite side from the plaintiff's lot. The form of the action involves the right of the railroad company to obstruct the plaintiff's way and water-course by means of the track laid across it. The authority to do this, claimed by the company, is found in the act authorizing the governor to incorporate the Philadelphia and Delaware County and Southwark Railroad Companies, approved April 2d 1831 ; the 14th section of an act approved 27th February 1838, and an ordinance of the city councils passed May 24th 1862. The tenth section of the Act of 1831 authorized the company " as soon as they conveniently can, to locate and construct a railroad of one or more tracks," and " to make, construct and erect such warehouses, toll-houses, carriages, cars and all the works and appendages necessary for the convenience of the said company for the use of said railroad." The oath of the viewers contained in the 12th section requires them to assess the damages caused by the construction of the railroad and other works. This grant of power unquestionably carries with it the right to construct turnouts, sidings, stations and engine-houses, and all works and appendages usual in the convenient operation of a railroad. A railroad without switches, sidings, turnouts and buildings for fuel, water, engines, stations, &c., would be useless in a great measure. They are essential to the operation of the road and to the transportation of freight and passengers with security and dispatch. The expression " as soon as they can conveniently locate and construct" is not a limitation upon the power to compel the company to exercise its whole authority in the very beginning, when the demands of business are few. It would be an unreasonable construction of its charter to require provision to be made for all the unknown wants of the future. The increase in trade and business, and the changes taking place, often require new and increased facilities. The argument that the track and the engine-house is the private way of the railroad company, not used by the public, and therefore no part of the public highway, is ingenious, but unsound. Admitting that it is not a part of the public highway, in the sense that it is not used immediately by the public, but by the company only, it does not follow that the ground is not taken for public use under the power of eminent domain. It is not the special use made of it which characterizes it, but its convenient necessity to that part which is for the public use. The principle of the argument would leave the state without power to take any land except that occupied by the main track of the railroad, and compel the company to operate it without the works and appendages necessary for the public safety and convenience.

It is argued also that the charter authorizes the taking of land

only which is corporeal, and not a right of way which is incorporeal. This refinement is too subtle for our comprehension. It is difficult to understand how a right to enter upon land, and locate and construct a railroad thereupon, can be arrested by the existence of an incorporeal hereditament issuing or served out of it. One would suppose that in taking the land the way itself is taken. *Omne majus continet in se minus* seems to forbid any other conclusion. If the land itself which supports the way can be taken, I can see no reason why its incident, the right of way over it, is not equally affected by the same taking for the use of the public.

It is said this is not a case of consequential damages, the taking being direct, and that the charter provides for compensation to the owner of the land only. It is argued, therefore, that in the absence of a provision for compensation to the owner of the right of way, the taking is contrary to the 10th section of the 9th article of the constitution. This argument is founded upon the cases of Workman *v.* Mifflin, 6 Casey 371, and Voegtly *v.* Pittsburg, Fort Wayne and Chicago Railroad Co., 2 Grant 245, in which it was held that the owner of a ground-rent is not affected by a taking of the property, out of which it issues for a highway, and that he cannot as the owner of an incorporeal hereditament, petition for an assessment of damages. It is unnecessary to doubt or consider the authority of these cases, the difference between the rights of the owner of a ground-rent being so clearly distinguishable from those of the owner of a right of way and watercourse. It is true that they are alike in the fact that they are incorporeal hereditaments but in nothing else : a ground-rent issues out of land and is charged upon it, but it has no particular *situs* upon it, and requires no use of it for its enjoyment. It is incapable of being taken or obstructed. It is a pecuniary burden only, the only ligament between the tenant and ground landlord being the reservation or covenant for its payment. Having no connection with the soil, it remains totally untouched by any use the railroad company can make of it. Apportionment of the rent, because of the taking of the land, is solely an equity arising between the tenant and the landlord. Hence the conclusions drawn in the cases referred to.

But the nature of a private right of way is different. A way has its defined route upon the land itself. *Ex vi termini* it imports a right of passing in a particular line. Washb. on Easement, ed. 1863, p. 160. It carries all rights to the use of the soil which are properly incident to its enjoyment. For instance, the grantee of the right of way over such an alley in a city may enter and pave and repair it: Id. 190, 196, 198, 199. The deed in this case expressly subjects the grantee to her proportion of

[Philadelphia, Wilmington and Baltimore Railroad Co. v. Williams.]

the expenses of keeping it in repair. The connection of the right with the land is in this case even more palpable, for it includes a right of watercourse, a thing distinct and obvious in its impression upon the land. The right carries with it a qualified use or occupancy of the ground itself. For an obstruction to a right of way, the owner of it has an action directly against the wrongdoer, distinct and independent of the action of the owner of the land for an injury done to his possession: Id. 158. These being the rights of an owner of a right of way and watercourse, it seems to me it would go too far to say that he cannot have a view to assess his damage, caused by a taking which directly obstructs the enjoyment of his way. A private road (says Black, J., in Carver v. Paul, 12 Harris 211) is private property, and an act of assembly to close it up, without paying for it, would be depriving the owner of his property. Having decided that the charter gives an authority to enter upon land and locate and construct a railroad, even against the right of an owner of an incorporeal hereditament issuing or served out of it, we must necessarily say that this carries with it a right to a view to assess damages whenever that right is directly injured by the entry and use of the land. It was because the adverse use of the land for a highway did not so affect the rights of the ground-rent landlord, it was held in Workman v. Mifflin, and Voegtly v. Railroad Co., he was entitled to the damages assessed or to petition for a view. This reasoning is strengthened by the analogy found in the case of Wilson v. Cochran, 10 Wright 229, opinion by the present chief justice. There a covenant of general warranty was decided to be broken by the entry of the owner of a private way who threw down the fences to enable him to exercise his right of passage on the land. This was held to be an actual *eviction* under title which enabled the defendants to set up the breach of the warranty as a defence to the payment of the purchase-money. We hold, therefore, in this case, that the legislature meant by the terms "owner or owners of such required land" to include all owners of titles in or growing out of land whose rights are capable of actual privation by the taking. The proper remedy of the plaintiffs below was not by an action, denying the right of entry to take the land, but by an application for the assessment of damages.

      The judgment is reversed, and judgment is now entered for the defendants below upon the point reserved.