212     487<br>37SC   296

# Taylor, Appellant, *v.* Erie City Passenger Railway Company.

*Street railways—Consent of owner—Estoppel—Equity.*

Where a street railway company has secured the consent of an abutting owner to the location of its railway on a public road, and has constructed its railway, but several years afterwards has been restrained at the instance of the township from unduly extending its switch in front of the consenting owner's property, the testamentary trustee of the consenting owner cannot, thirteen years after the consent was given, and nine years after the decree was entered, and several years after the township had waived its right to enforce it, maintain a bill in equity to compel the railway company to remove the switch in question which might have been removed by the township authorities under the decree in their favor before they waived their right to enforce it.

Argued April 25, 1905.   Appeal, No. 114, Jan. T., 1905, by plaintiff, from decree of C. P. Erie Co., Feb. T., 1903, No. 1, dismissing bill in equity in case of Matthew H. Taylor, Charles H. Strong, Richard H. Townsend, Jr., and John W. Little, Trustees of the Real Estate of William L. Scott, deceased, v. The Erie City Passenger Railway Company and Erie Electric Railway Company.   Before MITCHELL, C. J., DEAN, FELL, BROWN and ELKIN, JJ.   Affirmed.

Bill in equity for an injunction.   Before WALLING, P. J. The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Frank Gunnison,* for appellant.—The appellant may maintain a bill for an injunction for the abatement of an unlawful obstruction: Penna. R. R. Co.'s App., 115 Pa. 514; Thomas v. Ry. Co., 167 Pa. 120.

The right on the part of an individual injured by the exercise of an unauthorized act by a corporation, is given by the Act of June 19, 1871, P. L. 1360: Edgewood R. R. Co.'s App., 79 Pa. 257; Western Penna. R. R. Co.'s App., 104 Pa. 399; Hopkins v. Mfg. Co., 180 Pa. 199; Trenton Cut-Off R. R. Co. v. Ry. Co., 8 Pa. Dist. Rep. 549; Penna R. R. Co. v. Electric Ry. Co., 152 Pa. 116.

*J. M. Sherwin*, with him *S. A. Davenport*, for appellee.— The plaintiffs, aside from all questions as to their standing to avail themselves of the decree in the equity case in which they were not parties, are estopped from questioning the right of defendant to maintain this switch: Cox v. Phila. W. & B. R. R. Co., 10 W. N. C. 552; Hinnershitz v. United Traction Co., 199 Pa. 3; Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62; Potter v. Scranton Traction Co., 176 Pa. 271.

Plaintiffs are estopped because they have stood idly by while the defendants have expended in the last three years over $200,000, to equip this line of which this switch is a necessary part: Bradford v. Telephone, etc., Co., 206 Pa. 582.

Greater injury, both to the company and traveling public, will result from the removal of the switch, than by permitting it to remain: Becker v. Ry. Co., 188 Pa. 484; Heilman v. Ry Co., 180 Pa. 627; Heilman v. Ry. Co., 175 Pa. 188; Rafferty v. Traction Co., 147 Pa. 579; Pottsville v. Ry. Co., 148 Pa. 175.

The act of 1871, is not called in question, inasmuch as the jurisdiction of the court was not challenged. The case was tried without the question of jurisdiction being raised, and plaintiff has cited no decision whereby the act of 1871 gives to a person, not a party to a decree, a right to enforce such a decree: Becker v. Lebanon etc. Ry. Co., 188 Pa. 484.

OPINION BY MR. JUSTICE BROWN, June 22, 1905:

The appellants filed this bill to enjoin the use of a switch and to compel the appellees to remove it. The real estate abutting on the road on which the street railway is constructed belonged to William L. Scott, deceased, who devised it to the appellants in trust. In 1889, when the appellees constructed

their railway, he gave them permission to locate it in front of his property, with the necessary turn-outs.   During that year the switch in controversy, known as the "Blacksmith" or "Cemetery" switch, was constructed and has been used ever since by the appellees as a part of their system, in the improvement of which they have expended a large sum of money. Prior to 1893 they had five switches or sidings between the city of Erie and Trinity cemetery.   In that year they began to lengthen the sidings and the authorities of Mill Creek township filed a bill to restrain them from doing so, on the ground that the sidings were to be unnecessarily lengthened and would, if lengthened, practically make a second track on the highway.   The decree of the court below, affirmed here, Willis et al. Commissioners of Mill Creek Township, v. The Erie City Passenger Railway Company et al., 188 Pa. 56, prohibited the construction of any siding of a greater length than 360 feet, and directed that, as the switches were relocated and constructed, those supplied by them should be removed.

The "Blacksmith" or "Cemetery" switch was constructed in pursuance of authority expressly given the defendants to construct it by the property owner and the township authorities, and but for the proceeding instituted by the latter in 1893, resulting in the decree stated, the appellants would not be raising the question of the right to continue to use it.   In 1889 the owner of the property, whom they represented in 1902, when they filed this bill, had, in writing, granted to the appellees the right "to occupy and extend their line of railway and the necessary turn-outs" in front of his premises.   This switch is one of these turn-outs.   When the appellees, in 1893, were so lengthening their sidings as to practically construct a second track on the public road, the commissioners of Mill Creek township, to prevent the danger of traveling over the road with a second track constructed on it under the guise of sidings, filed a bill to enjoin their construction, and, after a full hearing a decree was made directing that five new ones could be constructed, and that as soon as any of them were relocated and constructed, those which they supplied should be removed. To that proceeding by the township commissioners these appellants were not parties, and they are not in a position to ask for the enforcement of the decree.   They allege that the

appellees are in contempt of it.   This question, however, can be raised only by those who are entitled to enforce it.   It was not made for the benefit of any private individual, but for the public in a proceeding by the public authorities, who had the supervision of the highway.   After the five switches had been constructed they might have asked for the enforcement of the decree, and, if so, an order would have been made for the removal of the " Blacksmith " or " Cemetery " switch, as it had been supplied by another.   But they could waive the enforcement of the decree, and did so, by formally permitting the defendants to continue the use of the switch, which was found by the court below to be of great value to them in the operation of the railway, of great convenience to the traveling public and occasioning no damage to the appellants.   More than four years after the township authorities might have insisted upon a removal of the switch, and more than three years after they had consented to its continuance, the appellants filed this bill.   Even if there had not been an express grant from Scott, authorizing the construction of the switch, with no objection to it from him or the present appellants until this bill was filed, equity would not decree its removal after this great lapse of time and the expenditure by the appellees of large sums of money in improving their tracks and system, of which the switch forms a part.

Defendants' seventh request for a legal finding by the court below was that, as the road commissioners of Mill Creek township, by resolution duly passed June 23, 1899, had given their consent to the continued use of the " Blacksmith " switch by the defendants, the construction of which had been duly authorized in writing by William L. Scott, the owner of the adjoining property, and as it had been constructed and remained in the use of the company without objection on the part of the heirs and representatives of Scott from 1889 until this bill was filed, the defendants were entitled to continue to use it in the operation of their railway.   In this request the whole situation is presented.   The learned judge properly found as requested, and the decree which logically followed his finding is affirmed at appellant's costs.