# Dunmore Borough, Appellant, *v.* Scranton Railway Company.

*Street railways—Double track railway—Construction of single track—Exhaustion of power—Act of March 23, 1865, P. L. (1866) 1199.*

A street railway incorporated under the special Act of March 23, 1865, P. L. (1866) 1199, with power to construct between points designated, "a railway with one or more tracks," does not exhaust its power by the construction of a single track railway, but it may more than three years after the passage of the act construct a double track railway to provide for the increasing needs of the public. There is nothing in the act of March 23, 1865, which requires the consent of a borough mentioned in the act as one of the terminals, to the construction of such railway within the borough limits; nor is the company required to take out a permit under an ordinance of the borough "regulating excavations in streets, and requiring permits therefor."

*Semble* that a borough has no standing to file a bill in equity by itself without notice to, or authority from, the state, to question the right of a railway company to add an additional track to a single track railway where the company has under its charter the right to "construct a railway with one or more tracks." It seems that no such authority is given to the borough by the Act of June 19, 1871, P. L. 1360.

Argued March 1, 1907. Appeal, No. 50, Jan. T., 1907, by plaintiff, from decree of C. P. Lackawanna Co., May T., 1905, No. 6, dismissing bill in equity in case of Dunmore Borough v. Scranton Railway Company. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity for an injunction.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*I. H. Burns,* with him *James W. McDonald,* for appellant.— The first laying exhausted the defendant's powers : Wirth v. Philadelphia City Pass. Ry. Co., 2 W. N. C. 650 ; Pierce on Railroads, 254 ; Morrow v. Com., 48 Pa. 305 ; Cleveland, etc., R. R. Co. v. Speer, 56 Pa. 325 ; Holden v. Cole, 1 Pa. 303 ; McMurtrie v. Stewart, 21 Pa. 322 ; Furniss v. Furniss, 29 Pa. 15 ; Mine Hill, etc., R. R. Co. v. Lippincott, 86 Pa. 468 ;

Jones v. E. & W. V. R. R. Co., 169 Pa. 333; Junction Pass.
Ry. Co. v. Williamsport Pass. Ry. Co., 154 Pa. 116; Com.
v. Street Commissioner, 3 Lackawanna Jurist, 45; People's
Pass. Ry. Co. v. Baldwin, 14 Phila. 231; P. & R. R. R. Co.'s
Appeal, 16 W. N. C. 165; Penna. Sch. Valley R. R. Co. v. P.
& R. R. R. Co., 157 Pa. 42; West Chester & Phila. R. R. Co.
v. Goddard, 10 Sadler's Sup. Ct. Cases, 53; Mooney v. The
Rome Railroad, 76 Ga. 749; Joplin & W. Ry. Co. v. Kansas
City, etc., R. R. Co., 135 Mo. 549 (37 S. W. Repr. 540);
Morris, etc., R. R. Co. v. Cent. R. R. of N. J., 31 N. J. L.
205; Tissue v. P. & C. R. R. Co., 12 Pa. Dist. Rep. 175;
Ransom v. Citizens' Ry. Co., 104 Mo. 375 (16 S. W. Repr. 416).

*E. N. Willard,* of *Willard, Warren & Knapp,* for appellee.—
The company had a right to lay the additional track: Phila.,
Wilmington, etc., R. R. Co. v. Williams, 54 Pa. 103; People's
Pass. Ry. Co. v. Baldwin, 14 Phila. 231; Penna. Schuylkill
Valley R. R. Co. v. Philadelphia, etc., R. R. Co., 157 Pa. 42;
Ransom v. Citizens' Ry. Co., 104 Mo. 375 (16 S. W. Repr.
416); Workman v. Southern Pac. R. R. Co., 129 Cal. 536 (62
Pac. Repr. 185).

OPINION BY HEAD, J., October 7, 1907:

Whilst the appellant asserts the irrelevancy of some of the
facts found by the learned judge who heard this cause, the
correctness of the findings is not challenged.  Indeed we do
not understand that any issue of fact has been raised by the
pleadings or testimony, but the whole controversy hinges upon
a pure question of law, viz.: has the defendant company, un-
der its charter, the right to do the acts complained of in the
bill?  From these findings and the testimony the following
statement of facts may be summarized.

The defendant company, then called the Peoples Street Rail-
way Company of Luzerne county, was incorporated by a spe-
cial act of assembly approved March 23, 1865, P. L. (1866)
1199.  By section 1 of that act the corporators named and
their successors were erected into a body corporate under the
title quoted, with perpetual succession; and the object for
which the corporation was created and the powers conferred
upon it to effectuate the creative purpose, were stated, in part,
in the following language, to wit: "and shall have the right

to lay out and construct a railway, with one or more tracks, with turnouts and sidings, from or near Scranton, to Providence, Hyde Park or Dunmore, through any streets or roads, etc., selecting any routes, between the places indicated, that they may deem advisable, etc." By section 4 it is provided " that the company may commence said railway at any time within three years from the passage of this act, the completion of any one mile thereof perpetuating all the rights hereby granted."

At the date of the passage of this act Scranton was but a borough. The evidence does not disclose whether Dunmore was then a borough or only a village ; but it is a matter of common knowledge that Scranton has grown to be the third city in entire commonwealth, whilst Dunmore—physically contiguous with and practically a part of the city, although retaining its municipal identity—is one of the large boroughs of the state, with a population nearly, if not quite, sufficient to entitle it to the rank of a city of the third class. Within the period of three years after its incorporation the defendant company had adopted its route and constructed and completed a railway, with a single track, from the city of Scranton to " Dunmore corners," a central point in the borough of Dunmore, and has ever since maintained and operated it. The rapid growth of the community, which set in during the decade between 1880 and 1890, impelled the company, if it desired to render the public service which was the object of its creation by the state, to make a corresponding development in its facilities to transport the traveling public, and accordingly it began to double track its line, starting in the city and gradually extending towards its other terminus, so that, as early as 1895, it had in operation a double track line to and into the borough of Dunmore. This double track, however, did not reach Dunmore corners. To do this it would be necessary to put down a second operating track along South Blakely street, upon which street but a single track had theretofore been used for the running of cars, although the business had required, for some years prior to the filing of this bill, the maintenance and use of a switch or siding for a distance of several hundred feet along that street. When the company began to convert its single track line and siding on Blakely street into a double

track operating line and to extend that line along that street to Dunmore corners, this bill was filed and a preliminary injunction sought. After an answer had been filed and a hearing had, the injunction was refused by Judge EDWARDS in a careful opinion covering the points in controversy. The company then went on, pendente lite, and finished its track and has been since operating it. At final hearing before Judge KELLY, the question involved was again carefully gone over, and that learned judge adopted the conclusions previously reached by Judge EDWARDS, strengthening them by additional reasoning and citations of authorities, and dismissed the bill. From that decree this appeal was taken. We may add that, during the year 1905, the company transported upwards of 2,200,000 passengers, and the court has found that the construction and operation of the additional track is " a substantial advantage to the defendant and to the traveling public without obstructing the general travel, over the street in question, to any appreciable extent." No consent of the municipal authorities of the borough of Dunmore to the laying of the additional track was asked or obtained by the company; and no permit, as required by an ordinance of that borough, adopted in 1901, " regulating excavations in streets and requiring permits therefor," was applied for by or issued to the defendant.

The main question raised and argued by the learned counsel for the appellant, viz.: that the act of the defendant, in attempting to construct and operate, on Blakeley street in Dunmore, a line of railway with double tracks, is ultra vires, is thus developed in his paper-book. " Let us again call the attention of the court to the exact grant that was made to the defendant. It was ' to lay out and construct a railway.' This railway might be a single track road or it might be a road with more than one track, but which of these two kinds of road should be constructed depended on the decision of the company. It might have either, but not both. When it had exercised such choice and built a road in compliance therewith the charter power was exhausted. The choice of the company was a single track road. It might have chosen to build a double track road, but it did not. When it exercised its right of option, such right was fixed and determined and could not be changed."

It is conceded, therefore, as it must be, that the charter of the defendant plainly and expressly conferred upon the company the right to do the very act now complained of, viz.: to construct and operate a line of railway with more than one track. Why does not that right now exist? Because, says the appellant, it was subsequently forfeited by the failure to build such a line within three years, or because the act of the company, in first building a single track line, amounted to a surrender of the conferred power to construct and operate a line with more tracks than one. How does the municipality of Dunmore acquire the right to raise and have determined such a question in a proceeding begun by itself without notice to or authority from the state, which long ago conferred the power and has not questioned its continued existence? Not under the Act of June 19, 1871, P. L. 1360, because the courts have uniformly held that it was not intended, by that act, to authorize a collateral attack upon a corporate franchise or charter. Whenever it has been made to appear, in a proceeding under that act, that the right of the corporation to do the act complained of had been expressly granted in the charter, then, although it might be alleged such right had been subsequently lost by forfeiture, non user, surrender or otherwise, the act had no further application. The only proceeding by which such alleged forfeiture or surrender could be ascertained and enforced, since the act of 1871 as before it, was one directly begun for that purpose at the instance and by the authority of the state itself. "In general after a charter is once shown, the subject is only open to further inquiry at the direct suit of the commonwealth itself. This act enables the private suitor to demand that the charter right to do the things complained of shall be shown. But it does not put him in the commonwealth's place or clothe the court, at his instance, with the commonwealth's powers of inquiry. The inquiry is limited to the nature and extent of the franchises prima facie conferred by the charter and does not extend to the validity of the charter itself:" Per MITCHELL, J., in Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Phila. & Merion Ry. Co.'s Petition, 187 Pa. 123; Western R. R. Co.'s Appeal, 104 Pa. 399.

Although the plaintiff is thus confronted, in limine, with a serious obstacle, inasmuch as this point was not pressed upon

us at the argument, we will consider and dispose of the questions raised on their merits. The opinions filed by the learned court below so thoroughly and satisfactorily vindicate the decree that but little of value may be added to them.

When the state created the defendant corporation and invested it with some of the high powers of its creator, it must have regarded the existence of such a corporation and the working out of the objects of its corporate life, as defined and prescribed in its charter, as helpful in the development of its territory, in supplying the wants and promoting the convenience of a portion of its people. As the state must have contemplated that the community, whose necessities its newly created corporation was to serve, would grow and multiply, thus bringing about ever changing conditions and ever increasing wants, so also it must have contemplated that the physical instrumentalities, through which the objects of the corporate life were to be accomplished, would develop and increase in power and efficiency. We regard the construction and operation of the second track by the defendant as nothing more than the normal development thus intended. We can find no evidence either in the title to the special act of 1865 or the body of it, that the legislature intended to confer upon the defendant the right to do but one of two separate and distinct things, so that its election to do the one would, by the terms of the act itself, work a prohibition of its right to do the other. In other words, the act does not treat a line of railway with one track, and a line with two tracks as species of a common genus, railway. On the contrary, the expressed purpose for which the corporation was created was single, viz.: the construction of a street railway between the points designated and the transportation of passengers over it, and the construction of a second track has, in no sense, changed the identity of the railway originally built or converted it into something not authorized by the legislative will as expressed in the act. And this conclusion seems to be not only consonant with sound reasoning but to be supported by the highest authorities. In Phila., Wilmington & Baltimore R. R. Co. v. Williams, 54 Pa. 103, the legislature had authorized the company "as soon as they conveniently can, to locate and construct a railroad of one or more tracks." Construing this grant Mr.

Justice AGNEW said: "The expression 'as soon as they can conveniently locate and construct,' is not a limitation upon the power to compel the company to exercise its whole authority in the very beginning, when the demands of business are few. It would be an unreasonable construction of its charter to require provision to be made for all the unknown wants of the future. The increase in trade and business, and the changes taking place, often require new and increased facilities." The principle announced in this plain language has not, to our knowledge, been adversely criticised in any subsequent case. It was again well stated in a careful opinion by the late Judge THAYER in this form: "No rule of law in this state requires a railroad corporation to exercise all the powers contained in its grant in the beginning, or declares that those powers which are not then exercised are lost:" People's Pass. Railway Co. v. Baldwin, 14 Phila. 231.

The application of it to the case before us seems to me to be destructive of the position of the appellant and the able argument of its learned counsel in support of it. Many other cases, some from the highest courts of other states, are cited by the court below, but no good purpose would be subserved by again quoting from them. We are of opinion, therefore, that the construction, by the defendant, of a second track on Blakely street was but the exercise of a power clearly conferred by its charter.

Could this charter power, however, be lawfully exercised within the borough of Dunmore without the consent of the local municipal authorities? There is nothing in the special act of 1865, which requires the company to obtain such consent before it may exercise its powers; nor was there anything in the then existing constitution or any general act of the legislature which made such consent a condition precedent to the enjoyment of the rights conferred by the charter. There was no legal obligation on the defendant, therefore, to seek the assent of the borough before laying its track, unless such obligation was imposed by the constitution of 1874. True, that instrument provides that "no street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of the local authorities." But it is the settled law of our state that "charters of private corporations

are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation: " Hays v. Commonwealth, 82 Pa. 518; Williamsport Pass. Ry. Co. v. Williamsport, 120 Pa. 1. The fact, therefore, that the consent of the local authorities was not obtained by the defendant in no way invalidated the full exercise of the company's charter powers and furnished no ground for intervention by the court.

We do not understand we are seriously urged to reverse the decree because the construction of the defendant's track was a violation of the borough ordinance offered in evidence. It surely was not the purpose of this bill which attacked the right of the company to build and operate a second track, and sought to restrain it permanently from doing so, to convict the defendant of a violation of an ordinance, the penalty for which is a small fine. Besides, the court below held, and we think rightfully, that the construction of a railway track on the surface of the street was not such an excavation as the ordinance intended to prohibit.

After a careful review of the entire record we are fully satisfied that the learned court below reached the correct conclusion and, therefore, the appeal must be dismissed.

Decree affirmed at the costs of appellant.