# Taylor, Appellant, *v* Erie City Passenger Railway Company.

*Street railways—Consent of owner—License as to switches—New needs of the public—Exhaustion of license.*

Where an owner of land abutting on a road consents to the occupation of the road by a street railway, and licenses the company "to occupy and extend their line of railway with the necessary turnouts and operate the same along said road," the company does not exhaust its license by building a switch 253 feet long, but may subsequently extend the same to a length of 360 feet, if it appears that such extension is not unreasonable under the circumstances and is demanded by the growth of the community.

The state in creating a corporation such as a street railway company contemplates that the development of the physical property by such corporation, of the means and appliances by which it works out the objects for which it is created, will keep pace with the growth of the community, and the ever-increasing demands of the people it is to serve. So long as such a corporation confines itself within the boundary delimited in its charter, and usurps no power withheld by the state or granted to others, it cannot be said to have exhausted its own powers of development because the facilities first adopted or constructed and then sufficient, turned out, later on, to be inadequate to enable it to respond to the demands of a growing section of the country.

Where a landowner licenses a street railway to "occupy and extend their line of railway with the necessary turnouts and operate the same

along " a road named, the license after the construction of the railway becomes irrevocable.

Argued April 13, 1908.  Appeal, No. 119, April T., 1908, by plaintiff, from decree of C. P. Erie Co., Feb. T., 1906, No. 2, dismissing bill in equity in case of Matthew H. Taylor et al., Trustees under the Will of William L. Scott, deceased, v. The Erie City Passenger Railway Company and Erie Electric Motor Company.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.  Affirmed.

Bill in equity for an injunction.  Before WALLING, P. J. The facts appear by the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*Frank Gunnison,* with him *John S. Rilling* and *Henry E. Fish,* for appellant.—The appellees having constructed their railway with a number of switches, of the length prescribed by the decree of the court, their license was exhausted and they had no authority to increase their encroachments on the highway afterwards by lengthening the switch in question: Bostock v. Sidebottom, 16 Jur. 1013; Onthank v. Lake Shore, etc., R. R. Co., 71 N. Y. 194; Evangelical Lutheran, etc., Home of Buffalo v. Buffalo Hydraulic Assn., 64 N. Y. 561; Roberts v. Roberts, 55 N. Y. 275; Allen v. Land & Water Co., 15 Lawyers' Rep. Annotated, 93; Trustees, etc., of Southampton v. Jessup, 10 App. Div. Rep. 456; Gilmore v. Wilbur, 29 Mass. 120; Hill v. Hill, 113 Mass. 103.

At common law a license could be revoked at any time even if money had been expended upon the faith of it: Wood v. Leadbitter, 13 Mees. & Wels. 838; 16 Eng. Ruling Cases, 449.

The common-law doctrine that a license can be revoked even though followed by an expenditure of money, has been followed in many states: Crosdale v. Lanigan, 129 N. Y. 604 (29 N. E. Repr. 824); Houston v. Laffee, 46 N. H. 505; 18 Am. & Eng. Ency. of Law (2d.), 1146, note 7; Blaisdell v. Portsmouth, etc., R. R. Co., 51 N. H. 483, cited in 12 Am. Law Register (N. S.), 258; Jackson & Sharpe Co. v. R. R. Co., 11 Am. Law Register (N. S), 374.

*J. M. Sherwin*, with him *S. A. Davenport*, for appellees.—
The original grant made by plaintiff to defendant contem-
plated the growth and enlargement of defendant's railway:
Rafferty v. Traction Co., 147 Pa. 579; Willis v. Ry. Co., 188
Pa. 56; Pottsville v. People's Ry. Co., 148 Pa. 175; Philadelphia
etc., R. R. Co. v. Williams, 54 Pa. 103; Cleveland, etc., R. R.
Co. v. Speer, 56 Pa. 325; Pittsburg Junction R. R. Co.'s App.,
122 Pa. 511; People's Pass. Ry. Co. v. Baldwin, 14 Phila. 231;
Phila. v. Ridge Ave. Pass. Ry. Co., 143 Pa. 444; Alden's App.,
93 Pa. 182.

It is not only the privilege, but the bounden duty of the de-
fendant to use modern, up-to-date cars, longer than the cars
used when trolley lines were first projected, and to operate them
according to modern methods, requiring a switch 360 feet long:
Millvale Boro. v. Evergreen Ry. Co., 131 Pa. 1.

The Supreme Court has already twice repudiated the al-
leged revocation: Willis v. Ry. Co., 188 Pa. 71; Taylor v. Ry.
Co., 212 Pa. 487.

No damages whatever to the plaintiff will result from the
construction of the proposed extension; whereas the traveling
public and defendant will sustain great inconvenience, damage
and delay if a switch of only 252 feet is used.


OPINION BY HEAD, J., October 12, 1908:

None of the testimony taken at the hearing in this case is be-
fore us because all of the parties have accepted the conclusions
of fact adopted by the learned trial judge. From these we have
taken such facts as seem to us to be necessary to an orderly de-
velopment of the questions involved.

As early as 1889 the defendant railway company, which for
some years had been operating a line in the city of Erie, was
duly authorized to build an extension along the Lake road
through Mill Creek township to Trinity cemetery. The source
of that authority was primarily the charter granted to the com-
pany by the state. The powers therein conferred, however,
could become effective only when supplemented by the consent
of the local township authorities and the owners of the land
abutting on the highway. These obtained, the company, in

1889, built a single track line along Lake road from the city to the cemetery, and in the following year carried the terminus some distance northward from that road to a summer resort called "The Head." Between the date when construction began and the spring of 1893, the defendant, in the operation of its line, had found it necessary to build five switches or "turn-outs" along the Lake road between the city and cemetery, but they were, as the court below finds, "of unequal distances apart and of insufficient length, and not intended as the permanent switches of the railway." One of these was known as the "blacksmith switch." It was built 253 feet long and at a point on the line where the land, on both sides of the highway, had belonged to the late Hon. W. L. Scott. He, with other property owners, had been a party to the "license" or "consent" given to the company in 1889 "to occupy and extend their line of railway with the necessary turn-outs and operate the same along said Lake Road." His title, after his death in 1891, became vested in the present plaintiffs.

In 1897 the plaintiffs undertook to revoke the license or consent given by Mr. Scott "so far as the construction of any new sidings, turn-outs, switches or the lengthening or extension of any . . . . already laid or constructed are concerned." In 1905 or 1906 the defendants were about to so extend the "blacksmith switch" as to make its entire length 360 feet instead of 253 feet, when this bill was filed to restrain them from so doing. The court below refused the injunction prayed for and dismissed the bill and hence this appeal.

The relative importance of this switch in the defendants' line and the practical necessity of increasing its length as stated in order to avoid annoying delays to the traveling public, are clearly set out in the seventh and eighth conclusions of fact.

The plaintiffs, however, plant their case upon the two propositions, (a) that the powers conferred by the "license" of Mr. Scott, had previously been worked to exhaustion and consequently the right to further lengthen a switch or turn-out could not be claimed thereunder; and (b) that, as to the proposed extension, the license had not been executed prior to 1897, so that the revocation of it at their pleasure was their right and,

by their exercise of that right, the defendants were shorn of any warrant, under the license, to make the proposed extension.

We cannot, we think, profitably undertake the consideration of these questions until we have first ascertained how far, if at all, their solution is controlled or affected by the two cases of Commissioners of Mill Creek Twp. v. Erie City Pass. Railway Co., 188 Pa. 56, and Taylor et al. v. Erie City Pass. Railway Co., 212 Pa. 487.

As early as 1893, the defendants, having then in operation their single track line of railway with five switches, as stated, undertook to extend each one of those switches to the length of 1,000 feet. Thereupon the township authorities, alleging that such extensions were unreasonable and unnecessary and, in effect, a disguised attempt to double track their line along Lake road, to the increased danger of the public traveling thereon otherwise than in the cars, filed a restraining bill and obtained a preliminary injunction. To that bill the plaintiffs never became parties. Whilst the cause was pending the road commissioners also undertook to revoke the consent or license previously granted by them so as to make it inoperative to authorize any construction or extension of switches, etc., not theretofore begun. They were then in a position to urge upon the court both of the propositions now contended for by the present plaintiffs and seem to have done so. The court held that by the building of the line on Lake road the license had become irrevocable; that the powers of the licensee in relation to switches or turn-outs had not been exhausted but that the extension of each switch to the length of 1,000 feet would be unreasonable and unnecessary and would amount to an abuse of the powers granted; that five switches, each of the length of 360 feet, if properly located, would give to the defendant company all necessary turn-outs. A decree was entered so modifying the preliminary injunction, theretofore granted, as to permit defendant to relocate all of its switches, if it chose, and to make each one of the length of 360 feet; but directing that "as soon as any of said switches are relocated and constructed the present switches, so far as thus supplied, shall be removed from the street."

Both sides appealed, but the decree was affirmed in a brief opinion by Chief Justice STERRETT.

Had the attempted revocation by the commissioners been effective in law to confine the powers of the company to the maintenance and operation of such switches as then existed and to prevent any increase in their number or length, the decree could never have been made. That revocation was in the same form, made at the same time, prompted by the same conditions and intended to accomplish the same object, as the one now under consideration. We must therefore regard the decision of the Supreme Court, affirming the decree of the court below, as an authoritative disposition of a question "on all fours" with that now before us, and following, as it does, a long line of cases, of which Rerick v. Kern, 14 S. & R. 267, is a leading and familiar one, it forces the conclusion that the position of the present plaintiffs, in this respect, is untenable.

After the termination of this litigation, which had covered a period of some years, the defendant relocated some of its switches, making them a uniform length of 360 feet. It built an entirely new one, called the "Harmon switch," and the learned court below has affirmed the plaintiffs' request for a finding that this switch "was designed to replace the 'blacksmith switch.'" Looking at the other findings of fact adopted by the court—particularly the seventh and eighth—it can hardly be said that such new construction accomplished the object for which it was designed, because the relative importance of the "blacksmith switch" to the system of the defendant and the practical necessity for its continued existence, do not appear to have been lessened thereby. That the road commissioners must have taken this view is indicated by their course in making no effort to enforce their decree to the extent of causing the removal of that switch and, later on, formally authorizing an increase of its length to 360 feet.

The present plaintiffs then, in 1905, filed a bill praying for a decree that the switch should be removed as an incumbrance, no longer lawful, upon their property. In the court below their prayer was denied and their bill dismissed. An appeal followed: Taylor v. Railway Co., supra. Had the Supreme Court affirmed

this decree merely on the technical ground that the plaintiffs, having been no parties to the proceeding resulting in the former decree, could not be heard to demand its enforcement, the case would demand no further consideration from us. But that court, we think, clearly expressed the conviction that the plaintiffs had shown no equity to invite interference, by a chancellor, in the continued maintenance and the use of the "blacksmith switch" by the defendant, and the decree dismissing the bill was affirmed.

It has been determined, then, that the plaintiffs have no power to lop off this important member of the defendant's system of railway. Upon what principle may they strike it with a blight and deprive it of the capacity for such reasonable development and growth as may be necessary, so that the whole body corporate may better accomplish the ends for which it was called into being? We know of none.

In Dunmore Boro. v. Scranton Ry. Co., 34 Pa. Superior Ct. 294, we endeavored to show that the state, in creating corporations like the defendant railway company, must have contemplated that the development of the physical property of such corporation, of the means and appliances by which it worked out the objects for which it was created, would keep pace with the growth of the community and the ever increasing demands of the people it was to serve.

That, as a consequence, so long as such a corporation confined itself within the boundaries delimited in its charter and usurped no powers withheld by the state or granted to others, it could not be said to have exhausted its own powers of development because the facilities first adopted or constructed, and then sufficient, turned out, later on, to be inadequate to enable it to respond to the demands of a growing section of the country. See also Keller v. Water Co., 34 Pa. Superior Ct. 301; Pottsville v. People's Ry. Co., 148 Pa. 175.

It was such a corporation, then perhaps in its infancy but endowed with the vital principle of growth, to which the plaintiffs' ancestor gave the license to construct its railway track "with the necessary turn-outs." He did not see fit to undertake to limit the number or length of such "turn-outs." So long as

they were increased in either way, only in response to the growth of the community, presumably he saw no reason to limit them seeing in that growth the consideration for the grant he made. Against any arbitrary or unreasonable or unnecessary increase of such switches he was protected by the law. The "blacksmith switch" was built under the power he conferred. He must have contemplated that the company could, under that power, build the switch to any reasonable length required by the demands of its traffic. It was not obliged to exercise all of its power, in this respect, at once.

The extension of this important switch to the length contemplated is in no sense unreasonable, it is no abuse of the power conferred by Mr. Scott, it is forbidden by no law, it will serve the public convenience, aid the defendant in the quick and safe transportation of large numbers of people and will not "cause any actual damage to plaintiffs' property." Under such circumstances we can see no safe foundation upon which a court of equity could rest such a decree as is sought by this bill.

Decree affirmed and bill dismissed at costs of appellants.